**UNITED STATES of America, Appellee,**

v.

**Stephen LEEDS and Richard Gilbert, Appellants.**

**Nos. 535, 536, Dockets 71-2143, 71-2173.**

United States Court of Appeals, Second Circuit.

Argued Feb. 18, 1972.

Decided March 14, 1972.

Sheila Ginsberg, The Legal Aid Society, New York City (Robert Kasanof, New York City, on the brief), for appellant Leeds.

Neil J. Hurwitz, New York City (Marvin B. Segal and Segal & Hundley, New York City, on the brief), for appellant Gilbert.

John W. Nields, Jr., Asst. U. S. Atty., New York City (Whitney North Seymour, Jr., U. S. Atty., and Howard Wilson, Asst. U. S. Atty., New York City, on the brief), for appellee.

\* Of the District of Maryland, sitting by designation.

1. 18 U.S.C. § 3500 (1970).

2. On this appeal, neither appellant challenges the sufficiency of the evidence to support the convictions on the substantive counts; they do claim there was insufficient evidence to establish the conspiracy. Even at the trial, neither appellant denied the sale of LSD and heroin to one or more of the agents; both claimed to have been entrapped.

Before FEINBERG and TIMBERS, Circuit Judges, and THOMSEN, District Judge.\*

TIMBERS, Circuit Judge:

The only issues on appeal in this routine narcotics case which warrant brief mention are the alleged improper use by the prosecutor of Jencks Act[1] statements and the prosecutor's reference in his summation to cross-examining "a man he thinks is a liar."

Appellants Leeds and Gilbert appeal from judgments of conviction entered upon a jury verdict after a four day trial in the Southern District of New York, David N. Edelstein, Chief Judge, finding them guilty on one count of conspiring to distribute Schedule I and Schedule II narcotic drug controlled substances, in violation of 21 U.S.C. §§ 812, 841(a)(1), 841(b)(1)(A) and 846 (1970), and on two counts of distributing LSD and heroin, in violation of 21 U.S.C. §§ 812, 841(a)(1), 841(b)(1)(A), 841(b)(1)(B)(1970) and 18 U.S.C. § 2 (1970). Each appellant was sentenced to concurrent 18 month terms of imprisonment. Finding no prejudicial error, we affirm.

In view of the limited issues to which we address ourselves in this opinion, it is unnecessary to set forth the usual narrative of events during the extensive undercover investigation by the Bureau of Narcotics and Dangerous Drugs which culminated in the indictment returned on August 11, 1971. We hold that there was more than sufficient evidence from which the jury could have found that appellants were engaged in the business of distributing LSD and heroin, and that they conspired to do so, during the period from July 7, 1971 until their arrest on August 4, 1971.[2] At

the trial, which began on October 6, 1971 and concluded on October 11, five special agents of the Bureau of Narcotics testified for the government. Each of the appellants also testified, together with a character witness called by Gilbert. It is fair to say that there were issues of credibility to be resolved by the jury. In that context we turn directly to the two issues on appeal which merit brief discussion.

*Jencks Act Statements*

With respect to the alleged improper use of Jencks Act statements, the chain of events which led to appellants' claims on appeal started with the trial judge's pretrial order that the government turn over all § 3500 material to defense counsel prior to trial.[3] This was not required by the statute, 18 U.S.C. § 3500(a)(1970), or by our decisions construing the statute. United States v. Covello, 410 F.2d 536, 543–44 (2 Cir.), cert. denied, 396 U.S. 879 (1969); United States v. Gardin, 382 F.2d 601, 605 (2 Cir. 1967). We mention this not to fault the trial judge who undoubtedly was trying to conserve time at the trial itself; for we repeatedly have indicated that a trial judge should have broad discretion in administering the Jencks Act. United States v. Gardin, *supra*, 382 F.2d at 605; see United States v. Annunzia-

to, 293 F.2d 373, 381–82 (2 Cir.), cert. denied 368 U.S. 919 (1961). The point is that the production of the Jencks Act material here before the time appellants were entitled to it as a matter of right gave rise to the confusion at trial out of which appellants' claims of error arise.

In compliance with the judge's pretrial order, the government furnished to defense counsel on October 5, 1971 eight Jencks Act statements (GX 3501–3508) relating to the subject matter of the prospective testimony of those witnesses the government anticipated calling on its case in chief. One statement (GX 3509) was not turned over for the reason that it related only to the subject matter of possible government rebuttal testimony. It is this latter statement that has drawn the flak.[4]

Gilbert took the witness stand on his own behalf on October 7, Leeds on October 8. They and their counsel had had the Jencks Act material, with the exception of GX 3509, for two and three days, respectively. Their direct testimony appeared to the prosecutor to have been tailored to conform to the Jencks Act statements that had been turned over; but their testmony as to their whereabouts on the evening of July 8, 1971 was at variance with the surveillance report for that evening—the only Jencks Act statement not turned over (GX 3509).

---

3. The record shows that on October 5, 1971, the day before the trial began, the trial judge on his own initiative raised the subject of Jencks Act material and ruled as follows:

   "The Court:
   *       *       *       *       *
   And what about Jencks Act material?
   Mr. Wilson: The government will have it available tomorrow.
   The Court: I see no reason why you cannot make it available now in court. Let us anticipate that and get it out of the way.
   *       *       *       *       *
   Mr. Wilson: Your Honor, might I be heard on the Jencks Act material?
   The Court: Surely.
   Mr. Wilson: The government would ask that it rely on the statute itself.
   The Court: No, I have made my decision. I see nothing so crucial here

   as not to turn over the Jencks Act material today in court. Now let us get it finished.
   Mr. Wilson: I will have it xeroxed."

4. We are constrained to note in passing that this case is another illustration of what strikes us as doubtful wisdom on the part of the government in withholding production of Jencks Act statements. While we are mindful of the trial strategy here involved and the order for premature production, we find nothing whatsoever in GX 3509 that conceivably could have been prejudicial to the government if it had been turned over at the same time as the other Jencks Act material. To save needless argument in the trial court and on appeal, we think the government would be well advised to avoid in the future the practice of withholding production of Jencks Act statements of this character.

During cross-examination of appellants, the prosecutor inquired whether they had discussed their testimony with their attorneys and with their co-defendant, and whether they had seen GX 3501–3508. They answered in the affirmative. The prosecutor, continuing his cross-examination, then established that appellants had not seen GX 3509 before testifying. Up to this point, the prosecutor's cross-examination clearly was proper in attempting to show, if he could, that appellants had tailored their testimony according to the Jencks Act statements they had seen, and suggesting the obvious inference from their not having seen GX 3509.

Thereafter, in cross-examining Gilbert, the prosecutor attempted to show that GX 3509 related to the subject of surveillance on the evening of July 8; but the trial judge directed the prosecutor not to examine Gilbert about a report he had not seen.[5] Then on summation, the prosecutor, referring to the night of July 8, said:

"The problem for Mr. Gilbert in that particular story is that he didn't realize that there were surveillance agents that night, also. *That wasn't one of the reports he saw before he testified.*" (Emphasis added).

The government on appeal candidly concedes that the italicized statement above was improper because there had been no evidence that the reports Gilbert had read (GX 3501–3508) related to nights other than July 8, and that the report he had not read (GX 3509) did relate to the night of July 8. But the govern-

ment argues that, upon the entire record, the prosecutor's erroneous reference to the fact that Gilbert had not read GX 3509 was harmless. We agree.

First, Gilbert's counsel in summation having inaccurately described certain of the Jencks Act statements which were not in evidence,[6] we think the prosecutor at the very least was entitled to state that the record did not support such description. United States v. Feinberg, 140 F.2d 592, 595 (2 Cir.), cert. denied, 322 U.S. 726 (1944). Secondly, by the time of summations, the surveilling agents of the night of July 8 (Agents Murphy and Crawford) had been called by the government as rebuttal witnesses and had squarely contradicted Gilbert's testimony as to the whereabouts of Leeds that night.

■ We hold, upon the entire record, that the prosecutor's alleged improper reference to the Jencks Act statements on cross-examination and in summation, if error at all, was harmless. Rosenberg v. United States, 360 U.S. 367, 371 (1959); United States v. Hestie, 439 F.2d 131, 132 (2 Cir. 1971); United States v. Gardin, *supra*, 382 F.2d at 606.

*"Liar" Language in Summation*

With respect to the prosecutor's reference in his summation to cross-examining "a man he thinks is a liar," this issue warrants only brief mention. The sentence involved is as follows:[7]

"One of the things that a trial lawyer likes to see happen when he gets up to cross examine a man he thinks is a liar is by some lucky break to see

---

5. In view of our ruling below with respect to the use of the Jencks Act statements, it is unnecessary for us to pass upon the correctness of the trial judge's direction to the prosecutor in this regard.

6. For example, Gilbert's counsel in his summation argued that Agent Ferrarone, realizing just before trial that he had no proof connecting Gilbert with the conspiracy to sell narcotics, had made up the incriminating evidence about Gilbert. Gilbert's counsel then made this statement about Agent Ferrarone's reports,

of which there were four (GX 3501, 3502, 3503 and 3505):

"But he remembers now what he didn't remember then to put down in his report[s]. He didn't put any of it down. Not that, nor anything else regarding Richard Gilbert."

This statement is flatly contrary to Agent Ferrarone's reports made during the period July 9–August 6, 1971, each of which squarely incriminates Gilbert.

7. The prosecutor in his summation also referred several times to the unlikelihood that the agents had been lying.

him lie on the stand, and to be able to show it by his own words."

In United States v. Hestie, *supra*, 439 F.2d at 132, where the prosecutor had said in his summation that "[t]o acquit, you have to call all four of those agents liars," we observed that "[p]rosecutors would do well to avoid such extreme statements." We repeat that admonition here.

■ The government concedes in its brief in the instant case that "[t]he use of the phrase 'thinks he is a liar' was inappropriate." And of course when such characterization is applied to a defendant, as distinguished from a government witness, the risk of prejudice is greater. Read in context, however, we believe that the prosecutor's remark was no more than an attempt to lead into a discussion of two conflicting statements made by Leeds from the witness stand, stressing the significance of catching a defendant in a flat contradiction. We are satisifed that the prosecutor was not asking the jury to imply knowledge on the part of the prosecutor based on matters extraneous to the record; nor was he asserting his opinion on guilt or innocence. Under the circumstances disclosed by this record, we hold that the phrase was not prejudicial. United States v. Hestie, *supra*, 439 F.2d at 131; United States v. Murphy, 374 F.2d 651, 655 (2 Cir.), cert. denied, 389 U.S. 836

(1967) ; United States v. Greenberg, 268 F.2d 120, 123–24 (2 Cir. 1959) ; United States v. Private Brands, 250 F.2d 554, 557 (2 Cir. 1957), cert. denied, 355 U.S. 957 (1958). See Harris v. United States, 402 F.2d 656 (D.C.Cir. 1968).[8]

■ Moreover, no objection at trial having been made to this portion of the prosecutor's summation and since it did not constitute plain error, Fed.R.Crim.P. 52(b), appellants may not avail themselves of such error, if it were error at all, on appeal. United States v. Socony-Vacuum Oil Co., 310 U.S. 150, 238–39 (1940) ; United States v. Isaza, 453 F.2d 1259 (2 Cir. 1972), slip op. 1429, 1433 (January 19, 1972) ; United States v. DiBrizzi, 393 F.2d 642, 645–46 (2 Cir. 1968) ; United States v. Indiviglio, 352 F.2d 276, 281 (2 Cir. 1965) (en banc), cert. denied, 383 U.S. 907 (1966) ; United States v. Johnson, 331 F.2d 281, 282 (2 Cir.), cert. denied, 379 U.S. 905 (1964).

We have carefully considered each of the other claims of error raised by appellants' diligent counsel on appeal. We hold as to each such claim of error either that it was not raised below and, not being plain error, may not be availed of by appellants on appeal; or that the claim of error is without merit.

The judgments of conviction of both appellants are affirmed.

---

8. In view of the earnestness with which counsel urge upon us the authority of *Harris* (the majority opinion having been written by then Circuit Judge, now Chief Justice, Burger), we wish to point out that the situation there was quite different from the situation in the instant case. In *Harris* there was only one narrow question of fact, and, under the circumstances of that case, the remarks of the prosecutor in his closing argument that the testimony of the defendant was a lie or fabrication amounted to a statement that the defendant was guilty in the prosecutor's opinion. The principal part of the opinion is devoted to the impropriety of counsel asserting to the jury what, in essence, was his opinion on guilt or innocence. The upshot of the case was that the judgment of conviction was affirmed. We are in accord with the opinion and the holding in *Harris*; but we do not believe that the prosecutor's remarks in the instant case should reasonably be construed as "expressions of personal opinions on the ultimate issue by counsel", or as an assertion by counsel "to the jury what in essence is his opinion on guilt or innocence." Harris v. United States, *supra*, 402 F.2d at 657, 658.