**UNITED STATES of America,**
**Appellant,**

v.

**Henry C. PERCEVAULT et al.,**
**Defendants-Appellees.**

**No. 613, Docket 73-2633.**

United States Court of Appeals, Second Circuit.

Argued Dec. 7, 1973.

Decided Jan. 8, 1974.

———◆———

Richard L. Shanley, Dept. of Justice (Robert A. Morse, U. S. Atty., E. D. N. Y., Denis E. Dillon, Alan R. Naftalis, Attys., Dept. of Justice, on the brief), for appellant.

Eleanor Jackson Piel, New York City, for defendant-appellee Percevault.

Frank E. Freeman, Miami, Fla., for defendants-appellees Rubinson and Cohen.

Before KAUFMAN, Chief Judge, and WATERMAN and FEINBERG, Circuit Judges.

IRVING R. KAUFMAN, Chief Judge:

In this appeal, taken prior to trial, we are called on to consider several novel questions pertaining to discovery in criminal cases. The government appeals, pursuant to 18 U.S.C. § 3731, from an order by Judge Weinstein suppressing and excluding from introduction at the forthcoming trial of United States v. Dennis Carroll et al. statements of prospective witnesses which the government has refused to disclose to the defense. Fed.R.Crim.P. 16(g). Despite this court's leadership in the movement toward liberalized rules of criminal discovery, United States v. Youngblood, 379 F.2d 365, 368–370 (2d Cir. 1967); United States v. Giampa, 290 F.2d 83 (2d Cir. 1961); cf. Dennis v. United States, 384 U.S. 855, 874, 86 S.Ct. 1840, 16 L.Ed.2d 973 (1966), we must reverse Judge Weinstein because we believe he exceeded his statutory authority.

### I.

Since the discovery stage in this criminal case has been quite prolonged and because the underlying prosecution is rather complex, it will serve clarity to turn first to the litigation that preceded Judge Weinstein's order. On April 4, 1973, Henry Percevault was named with sixteen other individuals and one corporation in a three count indictment charging conspiracy (18 U.S.C. § 371) and substantive securities law violations in connection with the sale of shares in Fleurette, Incorporated. (15 U.S.C. §§ 77q(a), 77x, 78j(b)). In addition to the co-defendants, four unindicted co-conspirators were named in the indictment.[1] Since the filing of the indictment, eight defendants have pleaded guilty to various counts and may testify for the government; four defendants are fugitives; and the charges against one defendant have been dismissed. Accordingly, only five defendants—Henry Percevault, George Cohen, Norman Rubinson, Leonard Kozman, and Equity Financial Trading Corporation—are currently awaiting trial.

On May 21, 1973, the lengthy process of discovery began when defendant Percevault, aided by able appointed counsel, filed a motion for severance and discovery in which he requested, *inter alia*, production of all confessions or statements of co-defendants as well as copies of all recorded statements made to the Securities and Exchange Commission and to the grand jury. After additional requests for disclosure were made, supported by memoranda of law and full argument, Judge Weinstein issued an order on October 10, 1973 (amended on October 26, 1973, 61 F.R.D. 338, in which he directed the government prior to trial to permit Percevault[2] to:

inspect and copy or photograph any relevant written or recorded statement or confession made

(1) by the defendant Percevault, or

---

1. We note that all defendants named in the indictment were named in the conspiracy count. Accordingly, our discussion of co-conspirators includes all the original defendants, whether they will stand trial or have pleaded guilty and may testify for the government.

2. Although the language of the order applies only to Percevault, the transcript of proceedings of October 26, 1973 indicates that the other appellees were given leave to join in the discovery motion and, indeed, were granted similar relief.

(2) by any co-defendant, or

(3) by any co-conspirator during the course and in furtherance of the conspiracy charged which the government intends to introduce against the defendant Percevault as his admission.

In his amended order of October 26, Judge Weinstein directed similar discovery of:

any relevant written or recorded statement or confession made by a co-conspirator after the conspiracy terminated, including grand jury testimony, reporting a statement that the government intends to introduce against the defendant Percevault as his admission because it was made by a co-conspirator in the course of and in furtherance of the conspiracy charged.[3]

During the course of oral argument before us, the government represented that it does not have in its possession any statements, including wiretaps, made during the lifetime of the conspiracy, and that it has not suppressed any exculpatory evidence. *See* Brady v. Maryland, 373 U.S. 83, 83 S.Ct. 1194, 10 L.Ed.2d 215 (1963). Moreover, we have been advised that the government has turned over to the defense all statements made by the five defendants who are awaiting trial and by several other defendants originally named in the indictment who will not be testifying for the prosecution. The only items the government has refused to disclose are those described by the chief Department of Justice attorney on the case in a letter to Judge Weinstein dated October 29, 1973, as:

written or oral statements or confessions made after the conspiracy terminated by co-conspirators, including co-defendants, whom the Government intends to call as witnesses at the trial . . . .

The government contends that the Jencks Act (18 U.S.C. § 3500) prohibits a district judge from compelling disclosure of a government witness' statements before the witness testifies at trial and thus, the Department's letter of October 29 is on firm ground.

Judge Weinstein, obviously dissatisfied with the strictures of the Jencks Act, made an effort to blaze new trails in the field of criminal discovery. He declared the Jencks Act inapplicable in the instant case and determined that the statements of co-conspirators, even those who are going to testify for the government, could, instead, be discovered under Fed.R.Crim.P. 16(a)—a provision which ordinarily governs the production of only those statements made by a defendant.

II.

The Jencks Act,[4] which is the exclusive vehicle for disclosure of statements

---

3. The order also included a protective provision which permitted co-defendants or the government to show why certain statements encompassed within the mandate of the order should not be disclosed. *See* Fed.R.Crim.P. 16(e). We have reviewed several documents ordered sealed by Judge Weinstein, which indicate that he has exempted a number of statements from his disclosure order.

4. 18 U.S.C. § 3500, provides, in relevant part:
(a) In any criminal prosecution brought by the United States, no statement or report in the possession of the United States which was made by a Government witness or prospective Government witness (other than the defendant) shall be the subject of subpena, discovery, or inspection until said witness has testified on direct examination in the trial of the case.

(b) After a witness called by the United States has testified on direct examination, the court shall, on motion of the defendant, order the United States to produce any statement (as hereinafter defined) of the witness in the possession of the United States which relates to the subject matter as to which the witness has testified. If the entire contents of any such statement relate to the subject matter of the testimony of the witness, the court shall order it to be delivered directly to the defendant for his examination and use.

Subsection (e) defines a statement, for purposes of disclosure at trial, as:
(1) a written statement made by said witness and signed or otherwise adopted or approved by him; or
(2) a stenographic, mechanical, electrical, or other recording, or a transcription there-

made by government witnesses, Palermo v. United States, 360 U.S. 343, 79 S.Ct. 1217, 3 L.Ed.2d 1287 (1959), was intended to serve several purposes. On the one hand, it protects the rights of a defendant by requiring the court to give the defendant access to relevant prior statements of a witness after the witness has testified at trial (18 U.S.C. § 3500(b)). On the other hand, the prosecution cannot be compelled to disclose statements of the witness before he has testified on direct examination (18 U.S. C. § 3500(a)). This unique but limited discovery device represents a legislative determination that access to a witness' statements could be useful in impeaching a witness but was not intended to be utilized in preparation for trial. Palermo v. United States, *supra*, 360 U.S. at 349, 79 S.Ct. 1217; 1957 U.S.Code Cong. & Admin.News pp. 1862–1864, 1869. *But see* Brady v. Maryland, *supra*. Since the only statements in issue here are clearly those of prospective witnesses and are accordingly within the scope of 18 U.S.C. § 3500(a),[5] the district court did not have the statutory authority to compel disclosure, over the government's objection, prior to trial.

Judge Weinstein's primary point of departure from the Jencks Act was Rule 16(a) Fed.R.Crim.P.[6] But, this rule was intended to permit the defendant liberal discovery only of his own statements in the government's possession—a right which had not been firmly established before 1966.[7] Since then we have stated that Rule 16(a) authorizes broad pretrial discovery of the defendant's statements, whether made during or after the commission of the crime charged; to a government agent, to a grand jury, or to anyone else; and whether obtained surreptitiously or voluntarily. United States v. Crisona, 416 F.2d 107, 114–115 (2d Cir. 1969) cert. denied sub nom. DeLyra v. United States, 397 U.S. 961, 90 S.Ct. 991, 25 L.Ed.2d 253 (1970). Moreover, we have expressed the view that "such a statement is obviously of such vital importance to the defense that fairness compels its disclosure, and . . . guilty pleas will thereby be encouraged." United States v. Crisona, *supra*, 416 F.2d at 114. *See also* Dennis v. United States, *supra*, 384 U.S. at 870, 86 S.Ct. 1840. Common sense and judicial experience teach that a defendant's prior statement in the possession of the government may be the single most cru-

of, which is a substantially verbatim recital of an oral statement made by said witness and recorded contemporaneously with the making of such oral statement; or

(3) a statement, however taken or recorded, or a transcription thereof, if any, made by said witness to a grand jury.

5. Although we find that production cannot be compelled prior to trial under 18 U.S.C. § 3500(a), we do not reach the question whether the contested statements are properly discoverable at trial under 18 U.S.C. § 3500(b), (e). That determination is, in the first instance, for the trial judge. Palermo v. United States, *supra*, 360 U.S. at 354–355, 79 S.Ct. 1217.

6. Rule 16(a) Fed.R.Crim.P. provides:

*Defendant's Statements; Reports of Examinations and Tests; Defendant's Grand Jury Testimony.* Upon motion of a defendant the court may order the attorney for the government to permit the defendant to inspect and copy or photograph any relevant (1) written or recorded statements or con-

fessions made by the defendant, or copies thereof, within the possession, custody or control of the government, the existence of which is known, or by the exercise of due diligence may become known, to the attorney for the government, (2) results or reports of physical or mental examinations, and of scientific tests or experiments made in connection with the particular case, or copies thereof, within the possession, custody or control of the government, the existence of which is known, or by the exercise of due diligence may become known, to the attorney for the government, and (3) recorded testimony of the defendant before a grand jury.

7. Prior to the 1966 amendment to the rule adding subsection (a), the defendant had no explicit right to discover his statements prior to trial and the extent of permissible disclosure was the source of considerable controversy. *See* Notes of Advisory Committee, 39 F.R.D. 175–176; Kaufman, Criminal Discovery and Inspection of the Defendant's Own Statements in the Federal Courts, 57 Colum. L.Rev. 1113 (1957).

cial factor in the defendant's preparation for trial. Moreover, it has been suggested that pretrial access to statements by defendants will lead to conservation of judicial resources because potential constitutional defects in the prosecution, for example, coerced confessions and illegal wiretaps, can be identified and examined prior to the trial. *See* ABA Standards Relating to Discovery and Procedure Before Trial, § 1.2 and Commentary pp. 40–43, Approved Draft (1970).

Although Rule 16(a) provides a mechanism for liberal discovery, it was not intended to provide the defendant with access to the entirety of the government's case against him. *See* Notes of Advisory Committee, *supra*, 39 F.R.D. at 176. Judge Weinstein, however, accepted Rule 16's broad mandate for disclosure of the defendant's statement while ignoring its inherent limitations. Accordingly, he expanded the scope of 16(a) to include statements made by persons who are not defendants.[8] He reached this result by a resourceful process of reasoning, whose apparent logical consistency evaporates under closer analysis. In effect, Judge Weinstein employed the vicarious admissions exception to the hearsay rule as a device for transposing the justifications for disclosing a defendant's statements to statements made by non-defendants. The vicarious admissions exception permits statements made by co-conspirators during the course of and in furtherance of a conspiracy to be introduced at trial against a defendant as if they were his admissions.[9] By reading Rule 16(a) and the co-conspirator hearsay exception in *pari materia*, Judge Weinstein reasoned that if Percevault were to be held vicariously responsible for statements made by co-conspirators, that "fairness" dictated they should be made available prior to trial. Indeed, Judge Weinstein

8. The disclosure of recorded statements made by persons other than the defendant is governed by Rule 16(b) Fed.R.Crim.P. which provides:

> *Other Books, Papers, Documents, Tangible Objects or Places.* Upon motion of a defendant the court may order the attorney for the government to permit the defendant to inspect and copy or photograph books, papers, documents, tangible objects, buildings or places, or copies or portions thereof, which are within the possession, custody or control of the government, upon a showing of materiality to the preparation of his defense and that the request is reasonable. Except as provided in subdivision (a)(2), this rule does not authorize the discovery or inspection of reports, memoranda, or other internal government documents made by government agents in connection with the investigation or prosecution of the case, or of statements made by government witnesses or prospective government witnesses (other than the defendant) to agents of the government except as provided in 18 U.S.C. § 3500.

Judge Weinstein placed great reliance on the reference to 18 U.S.C. § 3500 in Rule 16(b) and the omission of any reference to that section in Rule 16(a). Accordingly, he concluded that Rule 16(a) is not limited by the Jencks Act. Judge Weinstein was in error since Rule 16(b) clearly indicates that the Jencks Act is not modified in any respect by Rule 16. The use of the word "rule", rather than "subdivision" in the language of 16(b) suggests that no provision of Rule 16 was intended to alter the Jencks Act's exclusive governance of inspection of witness' statements. Moreover, the absence of a specific reference in Rule 16(a) does not imply a contrary conclusion, because 16(a) clearly refers only to statements made "by the defendant" and 18 U.S.C. § 3500(a) explicitly deals with statements made by an individual "other than the defendant."

9. Judge Weinstein grounded his conclusion on Proposed Federal Rule of Evidence 801(d)(2)(E). Although the Proposed Rules are not operative, Rule 801(d)(2)(E) merely codifies accepted practice. *See* Notes of Advisory Committee, 56 F.R.D. 299. Judge Weinstein determined that disclosure of co-conspirators' statements was "compelled" by Fed.R.Crim.P. 16(a), when read in conjunction with Proposed Rule of Evidence 801(d)(2)(E). Wholly apart from whether such strong reliance upon a proposed rule which has not been adopted as yet is warranted, we have found no suggestion in the legislative history of either Rule 16(a) or Proposed Federal Rule of Evidence 801(d)(2)(E) that the operation of the Jencks Act is to be modified. *See* Rezneck, The New Federal Rules of Criminal Procedure, 54 Geo.L.J. 1276, 1282 (1966).

clarified his purpose by stating that there is:

> much more need for the vicarious utterances of the defendant than for his own declarations to be revealed since in many cases he will be unaware of the many statements allegedly made by his fellow conspirators. His counsel should be apprised of them, for often they will be quite damaging unless explained.

■ ■ Although his notions of fairness may lead a district judge to encourage disclosure of statements made by co-conspirators who are potential government witnesses, Rule 16(a) simply does not encompass these statements, nor does the Jencks Act permit their disclosure over the objection of the government. Moreover, the considerations which support expansive pretrial discovery of statements made "by the defendant" (Fed.R.Crim.P. 16(a)) are not pertinent to those made by prospective government witnesses. Fear of intimidation of witnesses and concern over efforts to suborn perjury were not flights of fantasy by those who drafted Rule 16. *See* Notes of Advisory Committee, *supra,* 39 F.R.D. at 178; Rezneck, The New Federal Rules of Criminal Procedure, 54 Geo. L.J. 1276, 1286 (1966); United States v. Youngblood, *supra,* 379 F.2d at 369–370 n. 3.

Judge Weinstein's circumvention of the distinction between statements made "by the defendant" and those made by potential witnesses is not supportable for several additional reasons. The doctrinal underpinning of his ruling is the evidentiary rule that permits introduction at trial of statements made by co-conspirators during the lifetime of the conspiracy. *See* 4 Wigmore on Evidence §§ 1077, 1079. But, even this questionable premise will not support discovery of the statements at issue here, because the only statements not disclosed by the government were made *after* the termination of the conspiracy. Accordingly, the rationale for the vicarious admissions exception to the hearsay rule—that the declarant and the defendant have an identity of interest which enhances the reliability of the co-conspirator's statements, *see* 4 Wigmore on Evidence, *supra,* § 1077—is inapposite.

Judge Weinstein's order becomes somewhat convoluted occasionally and requires careful rereading. As we interpret his order, he was not directing pretrial disclosure of *all* post-conspiracy statements by prospective witnesses, but only so much of those statements that purported to relate conversations occurring during the pendency of the conspiracy. Mere narrative post-conspiracy statements were not within the scope of the order.[10] In brief, the district judge seems to have ordered discovery only of "statements-within-statements," by assuming their admissibility at trial as vicarious admissions. Although nothing we say is intended to reflect in any way on the issue of admissibility of such "statements" at trial, we note that Judge Weinstein's holding fails to overcome several statutory hurdles. As we noted above, pre-trial discovery of statements made by prospective witnesses during the lifetime of the conspiracy is not governed by Rule 16(a) (because made by someone other than the defendant) and is not permitted by the Jencks Act. Moreover, we cannot ignore that the only access the government has to these purported vicarious admissions is through post-conspiracy statements by prospective witnesses. Thus, the Jencks Act is clearly applicable, for as we commented in *Crisona,* 3500 material is, by its very nature, a recitation of past occurrences. United States v. Crisona, *supra,* 416 F.2d at 113; United States v. Sopher, 362 F.2d 523, 525 (7th Cir.) cert. denied 385 U.S. 928, 87 S.Ct. 286, 17 L.Ed.2d 210 (1966).

In view of our analysis of the plain language and clear purposes of both

---

10. Although the distinction between narrative statements and recitations of prior conversations is not manifest on the face of the order, the transcript of proceedings before Judge Weinstein on October 26 indicates this result was intended.

Rule 16 and 18 U.S.C. § 3500, we must conclude that Judge Weinstein exceeded his authority in compelling pretrial disclosure of statements made by prospective government witnesses. This view, moreover, is consistent with that taken by the Seventh Circuit recently in United States v. McMillen (7th Cir. October 17, 1973), where in a similar factual setting the Court of Appeals issued a writ of mandamus to deny the defense access to a co-conspirator's statements until he testified at trial. *See* Sendejas v. United States, 428 F.2d 1040, 1046 (9th Cir.), cert. denied, 400 U.S. 879, 91 S.Ct. 127, 27 L.Ed.2d 116 (1970).

### III.

■ ■ We should note finally that we see nothing inconsistent between our holding that the trial judge is prevented by the Jencks Act from ordering pretrial disclosure of statements made by a prospective government witness over the government's objection, and cases which have afforded the district judge a measure of discretion in administering the Act. Those cases did not consider the timing of the disclosure, but focused instead on a definition of the term "statement," United States v. Augenblick, 393 U.S. 348, 355, 89 S.Ct. 528, 21 L.Ed.2d 537 (1969); · Palermo v. United States, *supra*, 360 U.S. at 355, 79 S.Ct. 1217; or a determination of the appropriate procedures for transmission of Jencks Act material at trial, United States v. Gardin, 382 F.2d 601 (2d Cir. 1967).[11] Although we hold that the government cannot be compelled to disclose statements of prospective witnesses prior to the time prescribed by the Jencks Act, we note that in most criminal cases, pretrial disclosure will redound to the benefit of all parties, counsel, and the court. Indeed, sound trial management would

seem to dictate that Jencks Act material should be transmitted prior to trial, especially in complex cases, so that those abhorrent lengthy pauses at trial to examine documents can be avoided. *See* 8 J. Moore, Federal Practice, ¶ 16.10[1], at 16–117 (1973). We suggest that the district judge may find the pretrial conference, Fed.R.Crim.P. 17.1, a useful forum for establishing a timetable for discovery and for reaching agreements on the scope of disclosure. Particularly in multiple defendant cases, the district judge may solicit broad disclosure to assist him in disposing of motions for severance or in detecting inadmissible confessions under Bruton v. United States, 391 U.S. 123, 88 S.Ct. 1620, 20 L.Ed.2d 476 (1968). Pretrial discovery should be approached with a spirit of cooperation among court and counsel in order to prevent those burdensome trial recesses and also, we should emphasize, to protect the government against postconviction claims of prejudicial surprise, *see* United States v. Baum, 482 F.2d 1325, 1331–1332 (2d Cir. 1973), or claims of suppression of material and favorable evidence, *see* Brady v. Maryland, *supra*. In this connection, we were advised at oral argument that the government ordinarily is receptive to informal defense requests for discovery and is usually desirous of complying with a judge's disclosure order. We encourage that practice and our opinion should not be construed to the contrary.

In any event, this is not a case where the district judge relied on such discretionary powers over trial procedures as he may possess for his discovery order. Instead, the order, which was entered over the government's objection, was grounded on a statutory and rule interpretation we find untenable. Accordingly, we reverse.

---

11. Our dicta in United States v. Leeds, 457 F.2d 857 (2d Cir. 1972), is not apposite to the principle we are deciding today. In *Leeds*, which was an appeal from a conviction, we noted that the trial judge had directed disclosure of Jencks Act material on the day preceding trial and the government complied. Accordingly, the dicta in *Leeds* concerning the trial judge's discretion in administering disclosure must be viewed in the context of the government's acquiescence.