**UNITED STATES of America,
Plaintiff,**

v.

**Howard ZUCKERMAN, Defendant.**

**No. 99–CR–836.**

United States District Court,
E.D. New York.

Feb. 21, 2000.

Loretta Lynch, United States Attorney, Brooklyn, N.Y., by Stanley J. Okula, Jr., Assistant United States Attorney, for plaintiff United States of America.

DePetris & Bachrach, New York City, by Ronald E. DePetris, Marion Bachrach, of counsel, for defendant Howard Zuckerman.

## MEMORANDUM OF DECISION AND ORDER

SPATT, District Judge.

This is a criminal case charging the Defendant Howard Zuckerman with income tax evasion and tax fraud. He is charged with failing to file personal income tax returns for the years 1992–1995, and having made false statements omitting certain income and overstating certain deductions on those same returns when he eventually filed them. Presently pending before the Court are Zuckerman's objections to the Report and Recommendation of United States Magistrate Judge E. Thomas Boyle dated February 3, 2000 and Zuckerman's motion to dismiss the indictment, or in the alternative, an order suppressing evidence obtained from meetings Zuckerman had with IRS agents.

### *BACKGROUND*

Zuckerman was Senior Vice President of Finance for Tollman–Hundley Hotels, Inc. In late 1996 and early 1997, the IRS began an investigation of one of the principals of Tollman–Hundley, and requested an interview with Zuckerman to obtain certain information about his employer. The parties dispute the events surrounding this initial contact. The Government contends that it looked up information about Zuckerman prior to contacting him, discovered that he had not filed income tax returns for the preceding 4 years, visited his home and left a card with Zuckerman's wife asking that he call them. The Government further contends that, thereafter, Zuckerman contacted his accountant, and the accountant contacted the IRS to discuss the interview. During this phone call, the accountant informed the IRS agent that Zuckerman had not filed returns from 1992–1996, and indicated that he was in the process of preparing such returns.

According to Zuckerman, the agent expressed surprise at this statement by Zuckerman's accountant. Zuckerman agreed to meet with the IRS after being assured that he was not currently under investigation himself, but that he might become a subject in the future. Several more meetings were arranged between the IRS and Zuckerman over the next several months, all with the same general understanding between the parties regarding Zuckerman's status. On August 11, 1997, Zuckerman filed returns for the years 1992–1996, showing tax obligations of $130,000. The IRS contends that by this point, it had opened up a formal investigation of Zuckerman for failure to file. About a month later, the Government met with Zuckerman's attorney regarding the pending criminal investigation. Zuckerman argued that he was eligible for immunity under the IRS' Voluntary Disclosure policy, and would shortly be presenting an offer-in-compromise regarding his outstanding tax liability. Nevertheless, the IRS continued with the investigation, and on September 8, 1999, indicted Zuckerman on 8 counts of tax evasion and tax fraud.

Zuckerman moved to dismiss the indictment, arguing that he is eligible for consideration under the IRS' "Voluntary Disclosure Policy." While the parties disagree as to the exact wording of this policy, they agree that in general terms, the IRS has a practice of not recommending criminal prosecution where an individual makes a timely, voluntary disclosure of his failure to file a return. Based on the factual disputes concerning the events at issue, this Court referred the case to Magistrate Judge Boyle for a hearing on the facts underlying Zuckerman's claim under the Voluntary Disclosure Policy and the facts underlying Zuckerman's motion to suppress his statements based on claims of "trickery" by the Government.

Following a hearing on December 22, 1999, Judge Boyle made the following findings: (i) the IRS became aware of Zuckerman's failure to file tax returns in December 1996, when it began preparing to interview Zuckerman regarding his employer's tax returns; (ii) IRS agents left a card in Zuckerman's mailbox on January 23, 1997; (iii) Zuckerman was not a subject of the investigation at that

time, but because the IRS was already aware of his failure to file, the IRS agent intended to inform Zuckerman' of his rights to refuse to answer questions and have an attorney present for the interview; (iv) Zuckerman's accountant contacted the IRS on January 24, 1997 and admitted that Zuckerman had not filed his returns but intended to do so; (v) Zuckerman's accountant stated that Zuckerman wished to cooperate with the investigation even after being informed that Zuckerman himself could become a subject at some point in the future; (vi) IRS agents met with Zuckerman's attorney on February 5, 1997, at which time the IRS disclosed that they were aware of Zuckerman's failure to file and that Zuckerman could become the subject of an investigation in the future; (vii) Zuckerman voluntarily appeared for an interview on March 4, 1997; (viii) at this interview, with his attorney present, Zuckerman was informed that he was being interviewed as a witness, but could become the subject of an investigation himself due to his failure to file; (ix) the IRS did not inform Zuckerman that they became aware of his failure to file before ever contacting him; (x) Zuckerman was informed of his rights at the interview and informed that any statements he made could be used against him in any subsequent criminal proceeding; (xi) Zuckerman stated that he understood his rights and proceeded to be interviewed; (xii) Zuckerman eventually explained at the interview that he had not filed his own returns because he was awaiting information, then acknowledged that he intended to file when he obtained this information; (xiii) the IRS froze Zuckerman's account on March 14, 1997, ten days after the interview, in order to preclude the Civil Division of the IRS from compromising any future criminal prosecution of Zuckerman; and (xiv) Zuckerman became a formal subject of a criminal investigation on August' 1, 1997, and Zuckerman claimed to be within the Voluntary Disclosure Policy for the first time on August 4, 1997.

Zuckerman filed objections to Judge Boyle's Report and Recommendation on three major grounds: (a) that Judge Boyle erred in not finding that the IRS agents made false representations and materially omitted relevant information when speaking to Zuckerman and his tax attorney; (b) that the Judge failed to address whether the IRS met its obligations under the Voluntary Disclosure Policy in good faith; and (c) whether the Judge erred in failing to require the IRS to produce a document claimed to be privileged.

## DISCUSSION

Pursuant to 28 U.S.C. § 636(b)(1), any party may file written objections to the Report and Recommendation of a Magistrate Judge within ten days after being served with a copy. *See also* Fed. R.Civ.P. 72(a). Once objections are filed the district court is required to make a *de novo* determination as to those portions of the Report and Recommendation to which objections were made. see 28 U.S.C. § 636(b)(1); *Grassia v. Scully,* 892 F.2d 16, 19 (2d Cir.1989). The phrase *"de novo* determination" in section 636(b)(1)—as opposed to *"de novo* hearing"—was selected by Congress "to permit whatever reliance a district judge, in the exercise of sound judicial discretion, chose to place on a magistrate's proposed findings and recommendations." *U.S. v. Raddatz,* 447 U.S. 667, 676, 100 S.Ct. 2406, 65 L.Ed.2d 424 (1980). Section 636 does not require the district court "to rehear the contested testimony in order to carry out the required 'determination.' " *Id.* at 674, 100 S.Ct. 2406. Rather, in making such a determination, the district court may, in its discretion, review the record and hear oral argument on the matter. See *Pan Am. World Airways, Inc. v. International Brotherhood of Teamsters.,* 894 F.2d 36, 40 n. 3 (2d Cir.1990). Furthermore, the District Judge may also, in his sound discretion, afford a degree of deference to the Magistrate Judge's Report and Recommendations. *See U.S. v. Raddatz,* 447 U.S. 667,

676, 100 S.Ct. 2406, 2412, 65 L.Ed.2d 424 (1980).

In light of these standards, this Court will make a *de novo* determination with regard to the three objections raised by the Defendant.

### A. As to the alleged false representations and material omissions made by the IRS

■ Zuckerman first objects to Judge Boyle's finding that the IRS agents made no misrepresentations to him and his attorney. Zuckerman cites two specific misrepresentations: (i) the affirmative statements by the IRS that he was not a subject of an investigation when he clearly was, and (ii) the failure of the IRS to expressly inform Zuckerman that they had learned of his failure to file before speaking to his accountant.

IRS Agent George Nass testified at the hearing that "a subject investigation is basically a full-fledged investigation of a ... taxpayer ... to see if there's any merit to the allegations [that the taxpayer has violated the law]." Similarly, the Internal Revenue Manual–Administration defines a subject investigation as a situation where "an individual or entity [is] alleged to be in noncompliance with the laws enforced by the Internal Revenue Service and having prosecution potential." While Zuckerman attempted to demonstrate that Nass considered the case against Zuckerman to have such prosecution potential as early as December 1996, Nass' testimony clearly establishes that his initial findings regarding Zuckerman's filing status were insufficient for the IRS to consider whether any potential for prosecution of Zuckerman existed. In this regard, the following colloquy from the hearing is instructive:

Q [by Zuckerman's counsel]: Do you consider that that is—that a case has prosecution potential where an individual has income requiring him to file returns and has failed to file for at least three years?

A [by Nass]: Standing alone, no.

Q: What else do you need to know?

A: Well, you need to know, as far as the subject goes, knowledge and intent with respect to filing a return, and you—it would be nice to have the rest of the figures that would go on the return to see what type of a tax liability is involved.

Q: Do you need that information before you recommend prosecution, or do you need that information before you commence a subject investigation?

. . .

A: In New York, yes. I mean—yes.

From this testimony, the Court finds that Judge Boyle correctly determined that Zuckerman was not a subject of an investigation at the time IRS agents spoke with him and his attorney in March 1997. Zuckerman does not contend that the IRS had the type of information described by Nass at that point and thus, the IRS could not have determined whether the case had any prosecution potential at that time.

Zuckerman's great reliance on the IRS placing a freeze on his account shortly after the March 1997 interview is also unavailing. Nass credibly testified that such a freeze was necessary as a preventative measure to keep the Civil Division from compromising a claim before a decision as to the potential for prosecution could be made. Moreover, the Court notes that the freeze was placed on Zuckerman's account only after he had chosen to discuss his personal filing situation with Nass with full notice of the potential of criminal charges against him and his right to remain silent.

In any event, even assuming that Nass did misrepresent the status of the investigation against Zuckerman, this Court is hard-pressed to discern any prejudice to Zuckerman from such a statement. The facts reflect that Zuckerman, through his accountant, admitted that he failed to file before any statement about his status—misleading or not—was made by any IRS agent. Subsequent to that confession, every conversation between the IRS and Zuckerman or his attorney included the

warning by the IRS that Zuckerman could become the subject of an investigation at any time, and that anything Zuckerman said could be used against him in a future prosecution. Given these clear warnings prior to making any further statements, Zuckerman cannot be heard to complain that he thereafter spoke to the IRS with an expectation that he would never be prosecuted for his own filing deficiencies.

Similarly, the Court is not persuaded that the IRS deliberately omitted material information when talking to Zuckerman and his attorney regarding how the IRS came to be aware of Zuckerman's failure to file. Nass testified that in his initial conversation with Zuckerman's attorney in February 1997, he did not disclose the fact that the IRS knew about Zuckerman's status prior to his accountant's confession because Zuckerman's attorney failed to supply a power of attorney that would authorize Nass to disclose private information about Zuckerman to the attorney. Judge Boyle credited this testimony by Nass, and this Court sees no reason to disagree with that factual determination. Likewise, Nass testified that he didn't disclose that fact at the March 1997 meeting with Zuckerman because it "didn't come up." Such a contention is not surprising: the only situation raising the method by which the IRS learned of Zuckerman's filing status is where Zuckerman would be attempting to assert that his confession was timely under the Voluntary Disclosure Policy. However, Zuckerman does not dispute the fact that he never expressly informed the IRS that he intended to proceed under that policy until after the events at issue in this hearing. Because the issue of Zuckerman's admission of non-filing was not apparently discussed at the March 1997 interview, nor even contemplated by the IRS at that time, the Court is not troubled by Nass' failure to announce how he had learned of Zuckerman's failure to file tax returns.

Therefore, the Court holds that Judge Boyle did not err in finding that the IRS did not make any misrepresentations to Zuckerman. *See U.S. v. Tenzer,* 127 F.3d

222, 229 n. 3 (2d Cir.1997) (holding that suppression of statements made by a defendant attempting to comply with the Voluntary Disclosure Policy was not warranted where agents did not mislead defendant).

**B. As to the alleged application of the Voluntary Disclosure Policy**

■ Zuckerman next objects to Judge Boyle's finding that the IRS did not violate the Voluntary Disclosure Policy in their determination to prosecute him.

In *U.S. v. Tenzer,* 127 F.3d 222 (2d Cir.1997), the Second Circuit discussed briefly the history of the IRS Voluntary Disclosure Policy, observing that since 1952, the IRS has held that "even true voluntary disclosure of a willful violation will not, of itself, guarantee prosecution immunity ... [rather,] the Service will carefully consider and weigh it, along with all other facts and circumstances, in deciding whether or not to recommend prosecution." The most recent case to discuss the policy set forth the following elements of the voluntary disclosure policy:

> A voluntary disclosure occurs when the communication is truthful, timely, complete, and when the taxpayer cooperates with the IRS in determining the correct tax liability, *so long as the disclosure is received before the IRS has initiated an inquiry that is likely to lead to the taxpayer,* which the taxpayer is thought to be aware of, and the taxpayer does not know of some event that is likely to cause an audit.

*Crystal v. U.S.,* 172 F.3d 1141, 1146 (9th Cir.1999) (emphasis added).

Zuckerman contends that the indictment should be dismissed because he has met all of the elements of the voluntary disclosure policy. He alleges that his disclosure of his missing tax returns was "timely," since an IRS press release defines that term as "before [the taxpayer] is notified that he is under criminal investigation." However, the IRS manual actually defines "timely" as *"before the IRS has initiated an inqui-*

*ry that is likely to lead to the taxpayer* and that taxpayer is reasonably thought to be aware of that activity." (Emphasis added).

While Zuckerman initially focused his argument on the District Court opinion in *U.S. v. Tenzer*, 950 F.Supp. 554 (S.D.N.Y. 1996) *rev'd on other grounds*, 127 F.3d 222 (2d Cir.1997), which allegedly established that service of a subpoena on an accountant seeking a client's records is insufficient to put the accountant on notice that his own filing status might be questioned, this issue was largely mooted by the Government's contention that the IRS became aware of Zuckerman's filing status before they ever sought to interview him about his employer's taxes. In his objections to the Magistrate Judge's Report and Recommendation, Zuckerman makes an effort to resuscitate his timeliness claim by arguing that because he did not know that the IRS had conducted a computer search and discovered his failure to file before his accountant confessed that fact, he can show that he is still timely under the second half of the timeliness test.

That argument strains credulity. To accept Zuckerman's argument, the Court would have to find that Zuckerman's accountant *spontaneously* chose to call the IRS and disclose that Zuckerman had failed to file his tax returns for five years; and that the fact that IRS agents had attempted to contact Zuckerman a day earlier and left a business card at his house asking him to call them was nothing more than a remarkable coincidence. The Court finds it far more likely that Zuckerman, upon finding the card left by Nass, assumed that the IRS wished to speak to him about his own failure to file and instructed his accountant to call and quickly reveal all and promise to pay in the hopes of short-circuiting a full criminal investigation. Upon these facts, the Court finds that Zuckerman failed to make a timely disclosure of his failure to file within the requirements of the Voluntary Disclosure Policy, and is thus precluded from relying on the that policy. In light of this finding, there is no reason to address Zuckerman's

argument that the wrong decision-maker at the IRS determined that his admission was untimely.

■ Furthermore, even if Zuckerman's disclosure was timely, the Court would nevertheless decline to dismiss the indictment, on the grounds that compliance with the Voluntary Disclosure Policy is not insurance against prosecution, but merely one of many factors that the IRS should weigh in deciding whether to prosecute. *Crystal*, 172 F.3d at 1146 n. 6. The most recent version of the policy introduced at the hearing is dated 1995 and states:

Guidelines

(1) It is the practice of the Internal Revenue Service that a voluntary disclosure will be considered along with all other factors in the case in determining whether criminal prosecution will be recommended.

(2) *A voluntary disclosure will not of itself guarantee immunity from prosecution,* yet a voluntary disclosure may result in no prosecution recommendation. However, *since the IRS's application of the voluntary disclosure practice does not automatically result in immunity from criminal prosecution,* taxpayers should be advised that they cannot rely on the fact that others may not have been prosecuted.

Deft's. Ex. 3 (emphasis added). This language makes it abundantly clear that, even if Zuckerman could show that he complied with the terms of the policy—or even that he was arbitrarily denied the opportunity to do so—there is no assurance that the indictment here would not have been filed in any event. Indeed, although Zuckerman contends that the IRS deprived him of his right to due process in preventing him from complying with the policy, he does not contend that similarly situated taxpayers who were able to comply with the policy managed to escape prosecution. In deciding whether criminal prosecution is warranted under the facts of this case, with or without the additional element of

compliance with the Voluntary Disclosure Policy, this Court, in such a vacuum, is not prepared to substitute its discretion for that of the IRS.

Therefore, the Court finds that Zuckerman did not comply with the Voluntary Disclosure Policy, and that even if he had, there is no basis here to warrant dismissal of the indictment. Therefore, Zuckerman's motion to dismiss the indictment is denied.

### C. As to production of the privileged memo

■ Zuckerman's final objection to the Magistrate Judge's Report and Recommendation concerns a ruling by Judge Boyle that a Criminal Reference Letter prepared by Robert Marino, Senior District Counsel for the IRS, was protected by attorney-client and attorney work product privileges. Although Zuckerman devotes an entire bullet point to this issue in the introductory section of his objections to the Report and Recommendation, his brief offers no significant analysis of the issue or of Judge Boyle's ruling, and merely refers the Court to a letter brief on the issue submitted to Judge Boyle at the close of the hearing. That letter brief raises two main arguments: (i) that the Government waived any privilege by calling Senior IRS Attorney Ronald Rothman as a witness and questioning him about the conclusions he wrote about to Marino, and (ii) that the letter is discoverable under Fed.R.Crim.Pro. 26.2 and the Jencks Act, 18 U.S.C. § 3500.

The record on this issue is somewhat unclear. Rothman testified that he discussed the Voluntary Disclosure Issues in this case with Marino, who was the ultimate decision-maker on whether Zuckerman should be prosecuted. Rothman stated that he prepared a Criminal Reference Letter, and that Marino concurred in it. However, the letter received by Judge Boyle *in camera* is signed by Marino, not Rothman. In that letter, Marino merely states "This case was reviewed by Special Litigation Assistant Ronald F. Rothman," but the letter makes no reference to any document prepared by Rothman.

Assuming, for purposes of analyzing Zuckerman's arguments, that the Marino letter should be treated as the equivalent of Rothman's letter, the Court is nevertheless persuaded that no waiver of privilege has taken place. The testimony at the hearing was merely that Rothman prepared a Criminal Reference Letter that included a report on the Voluntary Disclosure issue and made a recommendation to Marino; Rothman did not testify about what his recommendation was or any of the details regarding his analysis. Disclosure of a general description of the subject matter of a privileged communication does not operate as a waiver of the privilege; in fact, a description of the subject matter of a privileged document is usually required in order to preserve the privilege. *See e.g.* Fed.R.Civ.P. 26(b)(5) ("When a party withholds information otherwise discoverable under these rules by claiming that it is privileged ... the party shall make the claim expressly and *shall describe the nature of the documents* ... in a manner that, without revealing information itself privileged or protected, will enable other parties to assess the applicability of the privilege or protection.") (emphasis added); Local Civil Rule 26.2(a)(2)(A) ("where a claim of privilege is asserted ... the following information shall be provided in the objection ... for documents: ... (ii) the general subject matter of the document.").

Rothman's testimony was elicited to oppose Zuckerman's argument that the appropriate IRS official did not authorize the criminal prosecution, and merely established that Marino, the appropriate official to institute a prosecution, did, in fact, make such an authorization. Because the Government at no time sought to introduce any evidence regarding the content of the Criminal Reference Letter, but merely indicated a signed letter existed, this Court fails to see how the Government can be said to have waived its privilege in the contents of the document.

◾ Moreover, the Court agrees with Judge Boyle that the Criminal Reference Letter is not discoverable under Fed. R.Crim.P. 16(a)(2). That Rule specifically exempts from discovery "internal government documents made by the attorney for the government ... in connection with the investigation or prosecution of the case." Clearly this letter fits within that definition. As to Zuckerman's argument that the letter is Jencks Act materials, this Court merely notes that the Jencks Act requires the government to produce statements by government witnesses only after the witness has testified at trial. *U.S. v. McKay,* 70 F.Supp.2d 208, 213 (E.D.N.Y. 1999). Nothing in that act provides a basis for the Court to direct the government to turn over statements prior to that time. *U.S. v. Algie,* 667 F.2d 569 (6th Cir.1982); *U.S. v. Percevault,* 490 F.2d 126 (2d Cir. 1974). Thus, Zuckerman's demand for the letter under the Jencks Act at this stage of the litigation is premature, and the Court need not address whether it is discoverable under that act at this time.

In conclusion, Zuckerman's objections to Judge Boyle's Report and Recommendation are denied in all respects.

### CONCLUSION

For the foregoing reasons, Zuckerman's objections to Judge Boyle's Report and Recommendation of February 3, 2000 are DENIED. This Court adopts the Report and Recommendation in its entirety. Furthermore, Zuckerman's motion to dismiss the indictment is DENIED.

**SO ORDERED**