**UNITED STATES of America**

**v.**

**Donald GREEN, Norman Workman, Clayton Green, Judy Spidell Green, Anita Workman, Mia Ayers, Marilyn Barnes, John Bolden, Clyde Brooks, Lamar Brown, Howard Doran, Robert Felder, Jackie Fuller, Kevin Green,** Carlos Herrera, Darryl Johnson, Nesbit E. Lee, Jose Lopez, Joe Mathews, Angelo Martinez, Lisa Medina, Doris Parker, Derwin Rodgers, Harold Smallwood, Terrence Taylor, Patricia Thomas, Defendants.

No. 92–CR–159C.

United States District Court, W.D. New York.

Oct. 30, 1992.

Dennis C. Vacco, U.S. Atty., William J. Hochul, Asst. U.S. Atty., Buffalo, N.Y., for U.S.

Terry Granger, Alan S. Hoffman, Buffalo, N.Y., for defendant Donald Green.

Mark J. Mahoney, Buffalo, N.Y., for defendant Clayton Green.

Angelo Musitano, Niagara Falls, N.Y., for defendant Anita Workman.

Michael L. Munley, Hamburg, N.Y., for defendant Marilyn Barnes.

Ralph C. Megna, Buffalo, N.Y., for defendant Clyde Brooks.

Thomas J. Eoannou, Buffalo, N.Y., for defendant Howard Doran.

Paul Volcy, Buffalo, N.Y., for defendant Jackie Fuller.

John Patrick Pieri, Buffalo, N.Y., for defendant Norman Workman.

Gerald J. Whalen, Buffalo, N.Y., for defendant Judy Spidell Green.

Kevin W. Spitler, Buffalo, N.Y., for defendant Mia Ayers.

James P. Harrington, Buffalo, N.Y., for defendant John Bolden.

Walter D. Bowman, Buffalo, N.Y., for defendant Lamar Brown.

Joseph J. Terranova, Buffalo, N.Y., for defendant Robert Felder.

John M. Molloy, West Seneca, N.Y., for defendant Kevin Green.

Daniel J. Henry, Jr., Hamburg, N.Y., for defendant Carlos Herrera.

John V. Elmore, Buffalo, N.Y., for defendant Joe Mathews.

Paul Kotch, Buffalo, N.Y., for defendant Lisa Medina.

Keith D. Perla, Buffalo, N.Y., for defendant Derwin Rodgers.

Kimberly A. Schechter, Buffalo, N.Y., for defendant Terrence Taylor.

Andrew C. LoTempio, Buffalo, N.Y., for defendant Nesbit Lee.

Terrence B. Newcomb, Buffalo, N.Y., for defendant Angelo Martinez.

Rodney O. Personius, Buffalo, N.Y., for defendant Doris Parker.

Franklin Pratcher, Buffalo, N.Y., for defendant Harold Smallwood.

Patrick J. Brown, Buffalo, N.Y., for defendant Patricia Thomas.

Alan D. Goldstein, Buffalo, N.Y., for defendant Daryl Johnson.

## DECISION AND ORDER

HECKMAN, United States Magistrate Judge.

### INDEX TO DECISION AND ORDER

*UNITED STATES OF AMERICA v. DONALD GREEN, ET AL.*

**CAROL E. HECKMAN, UNITED STATES MAGISTRATE JUDGE**

I. COPYING COSTS .............................................636
II. STATEMENTS OF UNCHARGED CO-CONSPIRATORS ..................638
III. HEARSAY EVIDENCE.........................................638
IV. REPORTS OF PHYSICAL EXAMINATIONS OR SCIENTIFIC TESTS ....639
V. IDENTIFICATION PROCEDURES AND WITNESS LISTS...............639
VI. LAW ENFORCEMENT DOCUMENTS................................640
VII. INFORMATION RELATING TO THE INTERCEPTED CONVERSA-
 TIONS ...................................................641
 A. Monitoring Logs And Summaries ........................641
 B. Copies Of Tapes ......................................641
 C. Verbatim Transcripts .................................642
 D. Floppy Disks ........................................642
 E. Completion Of Transcripts ............................642
VIII. THIRD PARTY RECORDS RELATING TO THE INVESTIGATION ......642
IX. PHOTOGRAPHS, CHARTS, GRAPHS, ETC........................643
X. PHYSICAL EVIDENCE .......................................643
XI. EARLY PRODUCTION OF JENCKS ACT AND *BRADY* MATERIAL ....643
XII. PRETRIAL DISCLOSURE OF 404(B) EVIDENCE .................645
XIII. REQUEST FOR "MASTER DISCOVERY DOCUMENT" ...............645
XIV. SCHEDULING OF FURTHER MOTIONS ..........................645

This 73–count indictment charges 26 defendants with engaging in racketeering activity (Count 1), racketeering conspiracy (Count 2), narcotics conspiracy (Count 3), possession of narcotics with intent to distribute (Counts 4–8), use of telephones to facilitate violations of 21 U.S.C. §§ 846 and 841(a)(1) (Counts 9–71), and obstruction of justice (Counts 72 and 73). The indictment alleges that the defendants are members of a long-standing narcotics and racketeering conspiracy whose purpose is to import large quantities of cocaine and heroin into the Buffalo area. It also alleges that the conspiracy uses acts of violence such as murder, kidnapping, assault and "drive-by" shootings to protect its activities and its members. The indictment was returned on July 8, 1992. Twenty-five of the defendants have been arraigned and one of the defendants remains at large. The government sought detention of most of the defendants. After holding detention hearings, 16 of the 25 defendants have been detained. These detained defendants are housed in a variety of facilities, many of which are a considerable distance from the courthouse. Eighteen of the 25 defendants are represented by counsel assigned under the Criminal Justice Act, 18 U.S.C. § 3006A.

Pursuant to this Court's Order of October 2, 1992, the defendants have filed a joint motion for discovery, with an accompanying memorandum of law. The government has filed opposing papers, and lengthy argument was heard on October 22, 1992.[1] The following constitutes the Court's ruling on the motion.

## I. COPYING COSTS

 Defendants have moved to have the government supply to each defense counsel, at government expense, a full set of all documents which it intends to use as evidence in chief, or which it has agreed are discoverable, as well as copies of the draft and final transcripts of the tape recordings which the government intends to use at trial. Defendants have cited a number of cases which support this relief. *United States v. Foreman,* No. CR 89–192 PHX RCB (D.Ariz.1990) (unpublished opinion attached as Ex.C to memorandum in support of defendants' joint motion) (indigent defendants entitled to transcripts of tape recorded conversations prepared at government expense); *United States v. De-Luna,* 31 Cr.L 2407 (W.D.Mo.1982) (government to provide at its own expense rough transcript of 1200 hours of tape recorded conversations to each of the defendants). *See also, U.S. v. Badalamenti,* 1986 WL 8309 (S.D.N.Y.1986) (government ordered to provide decent, non-custodial lodging or the cost of providing it for defendants during trial where defendants were forced to travel from their homes in Illinois to attend lengthy trial of 22 defendants in New York City); *United States v. Products Marketing,* 281 F.Supp. 348 (D.Del.1968) ("[I]n a proper case the right to effective counsel may require that the government reimburse an attorney or advance funds for expenses that are necessarily incident to an adequate preparation for trial").

The government has already supplied to lead defense counsel one full set of documents which it agrees are discoverable, but has refused to make copies for each defendant. The government has not submitted any cases, nor has it provided to the court any hard information as to the volume or cost of copying involved. Based on prior discussions with the court, however, I understand that the volume of documents is quite extensive. In addition, there are approximately 900 tape-recorded conversations, approximately 300 of which the government intends to use at trial.

This motion actually has two subparts. First is the question of whether defense counsel are each entitled to their own set of documents from the government. Second is the question of who pays for the copies and the related question of who makes the copies.

---

1. In addition to the joint motion, several of the defendants have filed supplemental motions seeking relief unique to their clients. Rulings on these motions will be made in a separate order.

The answer to the first question is readily apparent. As already noted, the government's indictment is lengthy and complex, and includes both a narcotics conspiracy count and a RICO conspiracy count. Sixteen of the defendants are being detained pending trial. Defendants are being housed at a variety of locations. Defense counsel are in large part work and practice in the City of Buffalo.

It is not feasible for defense counsel to prepare adequately for trial with only one set of government documents to share among them. Clearly, each defense counsel has to be in a position to review all the government's evidence and to review this evidence with his or her client, in most cases at the client's place of incarceration, in order to prepare for trial. All of the defendants are charged in one or both conspiracy counts and therefore the evidence relevant to one co-conspirator is relevant to the others as well. It is just not feasible that this be done with only one set of documents to be shared by all twenty-five defense counsel.

It is not a solution to have each defense attorney personally review the one set of documents already provided to lead defense counsel and make selected copies of those portions deemed relevant by that attorney. Having 25 attorneys reviewing one set of documents and taking selected portions away for copying will be cumbersome, time consuming and a scheduling nightmare. Individual attorneys will have incomplete sets of information, documents may be misplaced or placed out of order and there will be no ready means of identifying at trial who has received copies of what information. In the long run, this approach would be more costly and time consuming to all concerned.

The more difficult question is who should pay for the cost of copying. The trial court has considerable discretion regarding discovery matters under Rule 16. *United States v. Freedman*, 688 F.2d 1364, 1366 (11th Cir.1982). This includes the discretion to determine which parties should bear the initial or final cost of copying tapes or documents. *Id.* As the court in *Freed-*

*man* explained, however, this discretion is not "unbridled," and is guided by equitable principles such as reasonableness of the cost, hardship or prejudice to one party or the other, and efficient judicial disposition of criminal cases. *Id.* at 1366–67. *See also, In re Search Warrants Concerning National Insurance Consultants, Inc.*, 139 F.R.D. 684 (D.Co.1991).

The Second Circuit has not yet ruled on a request such as this. However, its language in *Premises Known As Statler Towers v. United States*, 787 F.2d 796, 798 (2d Cir.1986), is instructive. There, the Court refused to require the government to pay for copying documents of a party who had moved for return of property seized under a search warrant. The Court stated (emphasis added):

> *Absent exceptional circumstances*, we believe it proper to leave the burden of duplicating costs on the party who unsuccessfully moves before indictment for return of property seized under warrant. The government has a legal right to the evidence at that stage. Moreover, Rule 16 of the Federal Rules of Criminal Procedure suggests that the government need not pay to retain it. While Rule 16 governs criminal discovery and does not apply to preindictment motions such as those brought under Rule 41(e), it provides a useful analogy for solving the cost issue. *In a discovery context, Rule 16's clear import is that defendants, at least not indigent ones, must pay the cost of copying documents legally held by the government.*

The question, then, is whether exceptional circumstances exist in this case. Among the circumstances to be considered, along with the factors discussed above, is the indigence of the majority of the defendants in this case. *Id.* As noted in prior orders of this Court, eighteen of the twenty-five attorneys who have appeared to date are assigned pursuant to the Criminal Justice Act.

While assigned counsel may be able to obtain reimbursement under the Criminal Justice Act for copying expenses, I have concluded that this is not an adequate al-

ternative under the unique circumstances of this case. As a routine matter, such reimbursement is only available after the conclusion of the case. See *Vol. VII, Guide to Judiciary Policies and Procedures: Appointment of Counsel in Criminal Cases.* There is a cumbersome procedure to use for authorizing interim payments to assigned counsel, and assigned counsel have requested court authorization of interim payments of fees due to the expected length of the case and its complexity. However, any interim payments are limited to two-thirds of the expense, leaving the remaining one-third unpaid until completion of the case. *Id.* Moreover, there have recently been questions about the continued availability of funding under the Criminal Justice Act.[2]

As far as my research has uncovered, this case is one of unprecedented magnitude and complexity in this district. Certainly, the government must bear some responsibility for facilitating discovery and trial preparation by defense counsel representing indigent defendants. The materials sought are, without question, discoverable and necessary for adequate trial preparation. Defense counsel are already facing serious practical difficulties in preparing for trial caused by the location of many of the incarcerated defendants in facilities at a great distance from the courthouse, plus the sheer volume of discovery material (900 tapes) to be reviewed.

Under the authorities cited by defendants, I find that exceptional circumstances are present justifying an order that the government bear the cost of copying one full set of documents (including transcripts) for those defendants who have already been determined to be indigent. As to non-indigent defendants, they are responsible for their own copying costs.

As to copies of tapes, the government, in conjunction with defense counsel, is in the process of making two copies of the full sets of tapes which the government intends to use at trial. Lead defense counsel has agreed to advance the cost of making these tapes (estimated at $2,500) without preju-

dice to defendants' instant motion. Consistent with this order, the government is directed to reimburse lead defense counsel for 18/25 (72%) of the bill for these copies, which represents the proportion of indigent defendants to the total number of defendants in the case.

## II. STATEMENTS OF UNCHARGED CO–CONSPIRATORS

■■■ Defendants seek copies of all statements of the defendants, as well as statements of all uncharged co-defendants or co-conspirators. The government recognizes its responsibility under Rule 16(a)(1)(A) to provide discovery of the defendants' statements. These statements fall into three categories: written or recorded statements; oral statements made to government agents; and grand jury testimony of the defendants.

As to statements of uncharged co-defendants or co-conspirators, this request is denied. It is well established that the statements of the co-conspirators are not discoverable under Rule 16(a). *In re United States,* 834 F.2d 283, 286 (2d Cir.1987); *United States v. Percevault,* 490 F.2d 126 (2d Cir.1974). The Jencks Act provides the exclusive procedure for discovering statements that government witnesses have given to law enforcement agencies. *U.S. v. Covello,* 410 F.2d 536, 543 (2d Cir.), *cert. denied,* 396 U.S. 879, 90 S.Ct. 150, 24 L.Ed.2d 136 (1969).

In a related request, the defense seeks each and every statement of a co-conspirator which will be used at trial to demonstrate the existence of a conspiracy as charged in Counts 2 and 3 of the indictment. For the same reasons discussed above, this is not discoverable.

## III. HEARSAY EVIDENCE

■■■ The defense seeks any hearsay evidence intended to be introduced by the government at trial. I see no legal or factual basis for such disclosure and therefore deny this request.

---

**2.** See Exhibit A, Memorandum in Support of Joint Defense Motion for Discovery.

## IV. REPORTS OF PHYSICAL EXAMINATIONS OR SCIENTIFIC TESTS

■ The defense seeks the results of all physical examinations or scientific tests, as well as the underlying data, including lab notes prepared in connection with such examinations or tests. The government concedes that it has an obligation to turn over the results or reports of scientific tests as specified in Rule 16(a)(1)(D), but otherwise opposes this request.

After review of the legal authority cited by defendants, the government is directed to turn over to the defendants not only all scientific reports but also all findings, scientific or technical data upon which such reports are based. *United States v. Bel–Mar Laboratories,* 284 F.Supp. 875, 887 (E.D.N.Y.1968). Rule 16(a)(1)(C) provides for discovery of documents in the possession of the government "which are material to the preparation of the defendants' defense." Rule 16(a)(1)(D) provides discovery of "any results or reports of physical or mental examinations, and of scientific tests or experiments ... which are within the possession, custody, or control of the government...." These two provisions, when read together, provide ample authority for disclosure of this information.

Furthermore, the government has not demonstrated in its opposing papers or at oral argument that it will be prejudiced by disclosure of this information. To the contrary, it would appear to facilitate trial by enabling defense counsel to assess the correctness or sufficiency of the testing and to prepare to cross examine the government's experts and to present defense experts, if appropriate. *See United States v. Kelly,* 420 F.2d 26, 28 (2d Cir.1969).

## V. IDENTIFICATION PROCEDURES AND WITNESS LISTS

■ Defendants seek the particulars as to any information identification procedures used by the government in connection with the case, including the procedure used, the participants, the circumstances, copies of photographs, etc. The government opposes this request but does not identify any specific concern.

With the exception of the identity of witnesses or informants, the government is directed to provide to the defendants information concerning any identification procedures used in the case. *See, e.g. U.S. v. Barber,* 297 F.Supp. 917 (D.Del.1969) (photographs used for identification purposes ordered disclosed). Production of this information is necessary in order for the defendants to determine whether there are any Fifth or Sixth Amendment issues relating to identification . procedures which might require a suppression hearing. Since the government has refused to disclose any information whatsoever in this category, it is difficult to address with precision the potential issues which may arise. However, it is well recognized that pretrial identification procedures raise questions of due process under the Fifth and Fourteenth Amendments, as well as questions regarding the defendants' right to counsel under the Sixth Amendment. *See, e.g., Stovall v. Denno,* 388 U.S. 293, 87 S.Ct. 1967, 18 L.Ed.2d 1199 (1967); *Simmons v. U.S.,* 390 U.S. 377, 88 S.Ct. 967, 19 L.Ed.2d 1247 (1968). Furthermore, this material, particularly if it resulted in a mis-identification or a non-identification, would clearly be information which is material to the preparation of the defendants' defense and/or exculpatory information discoverable under *Brady v. Maryland,* 373 U.S. 83, 83 S.Ct. 1194, 10 L.Ed.2d 215 (1963).

The information that is to be disclosed does *not* include the identity of the government's witnesses or informants. It is well established that the government need not disclose the identity of informants unless it is essential to the defense. *Roviaro v. United States,* 353 U.S. 53, 60–61, 77 S.Ct. 623, 627–28, 1 L.Ed.2d 639 (1957); *United States v. Saa,* 859 F.2d 1067, 1073 (2d Cir.), *cert. denied,* 489 U.S. 1089, 109 S.Ct. 1555, 103 L.Ed.2d 858 (1988); *United States v. Russotti,* 746 F.2d 945, 949–50 (2d Cir. 1984). Nor does Rule 16 require the government to furnish the names of witnesses prior to trial. *United States v. Bejasa,* 904 F.2d 137, 139 (2d Cir.) *cert. denied,* —— U.S. ——, 111 S.Ct. 299, 112 L.Ed.2d 252 (1990). Nevertheless, a defendant may be

able to establish the right to disclosure where the informant is a key witness or participant in the crime charged or someone whose testimony would be significant in determining guilt or innocence. *Saa, supra* at 1073. While a court may order disclosure of the identities of witnesses, it should not do so in the absence of "a specific showing that disclosure is both material to the preparation of the defense and reasonable in light of the surrounding circumstances." *Id.* at 140.

In this case, defendants have made no showing that the identity of any witnesses would be essential to defendants' preparation for trial. In the absence of a showing of a particularized need, the court cannot order such pretrial disclosure.

## VI. LAW ENFORCEMENT DOCUMENTS

■ Defendants seek copies of all reports, complaints, evidence logs and other documents maintained by the federal government relating to the current indictment. They also seek the same items maintained by state or local governments and by state or local correctional facilities.

It is clear that Rule 16(a)(2) exempts from disclosure reports, memoranda or other internal government documents made by the attorney for the government or other government agents in connection with the investigation or prosecution of the case. Defendants have not cited persuasive authority to the contrary, and I see no reason to depart from the clear meaning of Rule 16(a)(2) in this case.

The defense argues, however, that this rule does not extend to the work product of state or local governments. In support of their contention, defendants cite *United States v. Gatto*, 729 F.Supp. 1478 (D.N.J. 1989). In that case, the defense subpoenaed documents from state law enforcement agencies for purposes of a detention hearing. The government moved to quash the subpoenas. In interpreting the exemption from discovery contained in Rule 16(a)(2), the Court stated:

The government argues that exclusion by Rule 16 of the discovery of reports and documents made by "the attorney for the government or other government agents in connection with the investigation or prosecution of the case" excludes most of the documents covered in the subpoena because they are mostly police and investigative reports. This reading of Rule 16's exclusions is overly broad. The Rule excludes reports prepared in connection with the investigation or prosecution *of the case*, not of other cases that may have come prior to it. The language of the statute suggests that it refers not only to attorney work product on the current case, not to investigations and prosecutions from the past.... Because the reports in the subpoena are not the work product of the United States Attorney in prosecuting this case, there is no blanket exclusion of reports by government agents as the government suggests.

729 F.Supp. at 1481.

The second case cited by the defense is *United States v. DeBacker*, 493 F.Supp. 1078 (W.D.Mich.1980). In that case, the defendant was prosecuted for violating the federal narcotics laws. The investigation had been conducted by the state. The district court ordered disclosure of the state police reports prior to federal involvement in the investigation, noting that the investigation of the defendant was not a joint venture by state and federal investigatory authorities, but was initiated by the state alone, and that therefore the state reports were not protected from discovery by Rule 16.

The government cites *U.S. v. Controni*, 527 F.2d 708, 712 (2d Cir.1975), *cert. denied*, 426 U.S. 906, 96 S.Ct. 2226, 48 L.Ed.2d 830 (1976). In that case, the Second Circuit held that the government had no obligation to permit inspection of wiretapped recordings in the possession and control of the Canadian law enforcement authorities.

The government also cites *U.S. v. Chavez–Vernaza*, 844 F.2d 1368 (9th Cir.1987), in which the federal prosecution was based in part on financial records acquired from the state officials. The defendant argued

that the government must disclose the manner in which the records were acquired in order to determine if there is any chance that the records were seized illegally. The Ninth Circuit disagreed, holding that the triggering requirement of a discovery request under Rule 16(a)(1)(C) is that the documents be in the actual custody or control of the Federal government. It further stated that the Federal government had no duty to obtain from state officials documents of which it was aware but over which it had no actual control.

It is apparent from a review of these authorities that defendants cannot force the government to produce copies of state police or prison reports unless the government already has such reports in its possession, or the government intends to use the reports as part of its case-in-chief. *United States v. Controni, supra;* Rule 16(a)(1)(C). However, to the extent that the government has in its possession reports or records from state or local law enforcement agencies or prisons, these items are discoverable unless they are the product of a joint investigation or unless they have become the work product of the federal investigators. *United States v. De-Backer, supra; United States v. Gatto, supra.*

There is insufficient information in the record on this motion to determine the nature of the state reports or memoranda which defendants seek. In order to assess the facts at issue, the government is directed to file an affidavit, *in camera* if necessary, enumerating each state or local enforcement or prison record in its possession and the basis for its opposition to defendants' discovery of such document.

## VII. INFORMATION RELATING TO THE INTERCEPTED CONVERSATIONS

Defendants seek several categories of information relating to the tape recorded conversations. Each request will be discussed in turn.

### A. *Monitoring Logs And Summaries*

First, the defense seeks all monitoring logs, summaries or other documents concerning the intercepted conversations. With the exception discussed below, the government represents that this information has already been provided.

The only exception brought to the attention of the Court are notes on minimization which are required to be kept in order to demonstrate compliance with 18 U.S.C. § 2510 *et seq.* Defense counsel have indicated that they intend to file a motion to suppress the intercepted conversations and therefore this information would appear to be necessary to determine the suppression motion. Since the government has not shown that it would be prejudiced in any way by disclosing the information, it is directed to do so.

### B. *Copies Of Tapes*

Second, the defense seeks copies of all video or audio tapes made in connection with the investigation, including a description of the form and location of the original recordings and the process by which the current copies were created. The government responded that it already had made available to the defendants tape recordings of the intercepted telephone conversations. In addition, at oral argument on this motion, the government agreed to make available to the defendants all tapes of other recorded conversations (such as body wires) with any of the defendants. Furthermore, in accordance with prior orders of this Court, defense counsel are obtaining two copies of all tape recordings for use by defendants in preparation for trial (see Part I, *supra*).

As to a description of the form and location of the original recordings, and the process by which the copies were created, this request is granted because it will assist the defendants in bringing appropriate suppression motions. *Cf. United States v. Louis Carreau, Inc.,* 42 F.R.D. 408, 413 (S.D.N.Y.1967) (verbatim recording of defendant's statement discoverable for the purpose of supporting pretrial motion to suppress). Furthermore, the government

has not stated any reason why providing this information would prejudice the government.

### C. *Verbatim Transcripts*

■ Third, the defendants have demanded verbatim transcripts of all conversations to be used by the government in its case in chief. The government has agreed to provide drafts of these conversations to defense, based on defendants' agreement not to use the drafts for any purpose detrimental to the government at trial. The government has also stated that final transcripts will be prepared after the draft transcripts have been completed, and will be provided to the defense upon completion.

The defendants request verbatim transcripts of all additional conversations identified by the defendants as being relevant to their defense but which the government does not intend to use at trial. I decline to require the government to undertake this burden. If defendants want to introduce into evidence other conversations, they must create their own transcripts.

### D. *Floppy Disks*

■ Fourth, defense has requested that all draft transcripts of tape recorded conversations provided by the government to defense counsel also be accompanied by a floppy disk. The government has stated that the draft transcripts are being prepared on a Word Perfect word processor and that floppy disks are available, but they refuse to provide them to the defense counsel. Given the volume of transcripts in this case as well as the fact that the transcripts will be changing as the draft transcripts are edited and finalized prior to trial, defendants' request has merit. *See generally United States v. DeLuna*, 31 CRL 2407 (W.D.Mo.1982). The government has not identified any reason why this cannot be done other than an unwillingness to go beyond the literal requirements of Rule 16.

Despite the government's objection, the trial court has considerable discretion to "impose reasonable conditions upon the re- cording[s]' admissibility." *United States v. Frazier*, 479 F.2d 983, 985 (2d Cir.1973), including a condition that an "advance preparation of an accurate transcript" be accomplished. *U.S. v. Jones*, 540 F.2d 465, 469 n. 3, (10th Cir.1976); *cert. denied*, 429 U.S. 1101, 97 S.Ct. 1125, 51 L.Ed.2d 551 (1977); *United States v. Gerry*, 515 F.2d 130, 143–44 (2d Cir.), *cert. denied*, 423 U.S. 832, 96 S.Ct. 54, 46 L.Ed.2d 50 (1975). It is reasonable to require their advance preparation, and to schedule the same in an effort to avoid last minute problems. Transmission of at least one set of the computer disks to defense counsel is a reasonable condition under the circumstances and will facilitate pretrial preparation by the defense. Those defense counsel who have the capacity to use the computer disk can then load it onto their own mainframe computers.

### E. *Completion Of Transcripts*

■ As to when the transcripts are to be completed, the government has represented that it can complete all draft transcripts by December 31, 1992. The government is directed to supply to defense counsel all such draft transcripts as they are prepared and no later than December 31, 1992. The government must provide the final version of any transcripts that it intends to submit to the jury in connection with the tapes by March 30, 1993.

### VIII. THIRD PARTY RECORDS RELATING TO THE INVESTIGATION

■ The defense next seeks documents obtained from financial institutions, utility companies, home services providers, common carriers and law firms relating in any way to the investigation. The government has represented that it has provided all documents to be used by the government in this case in chief. As to all remaining documents, the government states that the information is not discoverable.

I agree. I am not aware of any authority which would allow discovery of these documents, unless the defense can demonstrate that they are "material to the prepa-

ration of the defendants' defense." Based on the papers before the Court at this time, this showing has not been made. I explicitly reject defendants' argument that records obtained from financial institutions are records which "belong to the defendant" within the meaning of Rule 16(a)(1)(C).

## IX. PHOTOGRAPHS, CHARTS, GRAPHS, ETC.

■ The defense seeks photographs made in connection with the case as well as charts, graphs, maps or drawings related to the investigation. The government has responded that it has produced all such items which it intends to offer in its case in chief, but declines to produce any other items.

As to photographs, the government is directed to produce all photographs for review by defense counsel, whether or not it intends to use them at trial. The government has not indicated any reason why these should not be produced, and they very well may contain information which is material to the preparation of the defense. *See, e.g., United States v. Savides*, 661 F.Supp. 1024, 1026 (N.D.Ill.1987).

As to charts, graphs, maps or drawings related to the investigation, the government is directed to turn over to the defense all such items which it intends to use in its case in chief no later than 30 days prior to trial. Other such charts, graphs, etc. shall be turned over if required under *Brady v. Maryland* or the Jencks Act as further discussed below.

## X. PHYSICAL EVIDENCE

■ The defendants have sought discovery of physical evidence collected or seized in connection with the investigation, including the source, date and time of recovery of such evidence. This information may be relevant to suppression issues. The government has stated that all physical evidence in its possession is available for inspection at the offices of the F.B.I. The government has also indicated that few if any of the defense counsel have actually reviewed the physical evidence.

Defense counsel are directed to review the physical evidence first to determine if they can resolve disputes as to the source, date and time of recovery of such evidence. If such disputes cannot be resolved, the parties should file an appropriate motion before this Court in accordance with the deadlines set forth in Part XIII, *infra.*

## XI. EARLY PRODUCTION OF JENCKS ACT AND *BRADY* MATERIAL

■ Defendants seek early production of Jencks Act material (18 U.S.C. 3500), *Brady* material and *Giglio* impeachment material. *U.S. v. Agurs*, 427 U.S. 97 (1976); *Brady v. Maryland*, 373 U.S. 83, 83 S.Ct. 1194, 10 L.Ed.2d 215 (1963); *U.S. v. Giglio*, 405 U.S. 150, 154–55, 92 S.Ct. 763, 765–66, 31 L.Ed.2d 104 (1972); *Napue v. Illinois*, 360 U.S. 264, 79 S.Ct. 1173, 3 L.Ed.2d 1217 (1959). The government represents that it is not presently aware of any "exculpatory" *Brady* material but will produce such material if and when it becomes aware of it. As to information regarding material witness credibility or reliability, including evidence of agreements or promises of leniency, the government has stated that it will make such material available to the defense one week prior to trial, except that impeachment materials pertaining to government witnesses will be disclosed the day before the witness takes the stand.

The general rule concerning discovery of the statements of government witnesses is that the Jencks Act controls, and a "district court ha[s] no inherent power to modify or amend the provisions of that Act." *In re United States, supra*, 834 F.2d at 287. It is also the rule that the Jencks Act "is the exclusive vehicle for disclosure of statements made by government witnesses." *United States v. Percevault, supra*, 490 F.2d at 128–29. *See, also*, Fed.R.Crim.P. 26.2. However, as the Second Circuit made clear in *Percevault*, "pre-trial disclosure will redound to the benefit of all parties, counsel and the court[;] sound trial management would seem to dictate that Jencks Act material should be submitted prior to trial, ..., so that those abhorrent lengthy pauses at trial to examine documents can

be avoided." *United States v. Percevault*, 490 F.2d at 132.

Accordingly, the Court has "discretion in administering disclosure" of so-called 3500 material and the like "viewed in the context of the government's acquiescence." *United States v. Percevault*, 490 F.2d at 132 n. 11. This is especially so in this complex multi-defendant case, which includes over 900 tape recorded conversations, a large number of potential government witnesses and a huge volume of discovery materials. Furthermore, trial preparation is greatly complicated by the large number of defendants in custody, many of whom are being housed at some distance from the courthouse.

Balancing defendants' right to a fair trial against the government's interest in non-disclosure until one week prior to trial, the Court concludes that 3500 material should be turned over to the defense no later than 30 days prior to jury selection. *United States v. Feola*, 651 F.Supp. 1068 (S.D.N.Y. 1987), *aff'd*, 875 F.2d 857 (2d Cir.) (mem.), *cert. denied*, 493 U.S. 834, 110 S.Ct. 110, 107 L.Ed.2d 72 (1989).

As to defendants' request for early disclosure of *Brady* material, the government proposes disclosure of all *Brady* material one week prior to trial. This is not necessarily sufficient to meet the prosecutor's compliance with the *Brady* requirements. The issue of the required timing of *Brady* and *Giglio* material disclosure is not a settled one. *See, e.g., United States v. Deutsch*, 373 F.Supp. 289, 291 and nn. 5–6 (S.D.N.Y.1974). As the Supreme Court stated in *Weatherford v. Bursey*, 429 U.S. 545, 97 S.Ct. 837, 51 L.Ed.2d 30 (1977), "there is no general constitutional right to discovery in a criminal case and *Brady* did not create one." *Id.* at 559, 97 S.Ct. at 846. However, this axiomatic statement does not settle whether the due process clause requires pretrial disclosure of exculpatory or impeachment material in a particular case. *United States v. Starusko*, 729 F.2d 256, 269 (3d Cir.1984) ("Compliance with the statutory requirements of the Jencks Act does not necessarily satisfy the due process concerns of *Brady* "). More re-

cently, the Second Circuit has observed that pretrial *Brady* disclosure to a defendant is appropriate and necessary in certain circumstances. *U.S. v. Bejasa, supra*, 904 F.2d at 140–41; *United States v. Agajanian*, 852 F.2d 56, 58–59 (2d Cir.1988).

As to the appropriate timing of *Brady* disclosure, the matter was perhaps best stated by Judge Lumbard of this circuit, writing for a panel of the District of Columbia Circuit in *United States v. Pollack*, 534 F.2d 964 (D.C.Cir.), *cert. denied*, 429 U.S. 924, 97 S.Ct. 324, 50 L.Ed.2d 292 (1976):

> Disclosure by the government must be made at such a time as to allow the defense to use the favorable material effectively in the preparation and presentation of its case, even if satisfaction of this criterion requires pre-trial disclosure. [citations omitted]. The trial judge must be given a wide measure of discretion to ensure satisfaction of this standard. While some courts have held that *Brady* affords no pre-trial discovery rights to defendants, [citations omitted], we believe that application of a strict rule in this area would inevitably produce some situations in which late disclosure would emasculate the effects of *Brady* or other situations in which premature disclosure would unnecessarily encourage those dangers that militate against extensive discovery in criminal cases, e.g., potential for manufacture of defense evidence or bribing of witnesses. Courts can do little more in determining the proper timing for disclosure than balance in each case the potential dangers of early discovery against the need that *Brady* purports to serve of avoiding wrongful convictions.

*Id.* at 973–74. That the Second Circuit's footnote in *United States ex rel. Lucas v. Regan*, 503 F.2d 1, 3 n. 1 (2d Cir.1974), *cert. denied*, 420 U.S. 939, 95 S.Ct. 1149, 43 L.Ed.2d 415 (1975), does not create an inflexible rule against *Brady* disclosure in the pretrial state is further evidenced by the Second Circuit's decision in *Grant v. Alldredge*, 498 F.2d 376 (2d Cir.1974). In the *Alldredge* case, the Court reversed a conviction for failure to disclose important

*Brady* information which would have had a material bearing on the defendant's trial preparation. In doing so the Court quoted Judge Mansfield's opinion in *United States v. Cobb,* 271 F.Supp. 159, 163 (S.D.N.Y. 1967) ("[T]here may be instances where disclosures of exculpatory evidence for the first time during trial would be too late to enable the defendant to use it effectively in his own defense, particularly if it were to open the door to witnesses or documents requiring time to be marshalled and presented.")

Accordingly, the government is presumably aware that certain *Brady* and *Giglio* material is of such significance that it must be provided to the defendant well in advance of the trial so as "to allow the defense to use the favorable material effectively in the preparation and presentation of its case." *United States v. Pollack,* 534 F.2d at 973; *see United States v. Bejasa,* 904 F.2d at 140–41; *Grant v. Alldredge,* 498 F.2d at 381–82. Other *Brady* and *Giglio* material should be disclosed with the 3500 material, which in the context of this case is at least 30 days prior to jury selection. *United States v. Feola,* 651 F.Supp. at 1135–36; *see also, United States v. Bestway Disposal Corporation,* 681 F.Supp. 1027, 1130 (W.D.N.Y.1988).

## XII. PRETRIAL DISCLOSURE OF 404(b) EVIDENCE

■ Defendants have moved for pretrial disclosure of any evidence the government intends to use pursuant to Rule 404(b) of the Federal Rules of Evidence. Specifically, defendants seek evidence of "any alleged criminal or immoral conduct on the part of any defendant intended to be used against any defendant on the government's direct or rebuttal case or an examination of any defendant who might testify at trial." The government has agreed to provide this evidence two weeks before commencement of trial and at an earlier date when possible.

Rule 404(b) requires the prosecution in a criminal case to provide "reasonable notice in advance of trial, or during trial if the court excuses pretrial notice on good cause shown, of the general nature of any such evidence it intends to introduce at trial." Early disclosure is necessary to permit defense counsel to prepare and file appropriate motions *in limine* on the issue of admissibility, and to avoid unnecessary interruptions at trial. *United States v. King,* 121 F.R.D. 277 (E.D.N.C.1988). What is reasonable depends on the circumstances of the case. As already noted, the complexity and volume of evidence in this case requires disclosure of Jencks Act materials no later than 30 days prior to commencement of jury selection. The same time frame should also apply to 404(b) evidence.

## XIII. REQUEST FOR "MASTER DISCOVERY DOCUMENT"

■ Defense counsel has requested that they be provided with one hard copy of a "master discovery document" with each page marked consecutively with page numbers, pre-drilled three holes at the left-hand edge, etc. The government has already provided one set of all documents it intends to use at trial to lead defense counsel and has indicated it will continue to provide documents as they are developed or acquired. I see no basis for requiring the specific numbering and hole punching of these documents.

## XIV. SCHEDULING OF FURTHER MOTIONS

The following schedule is set for additional pretrial motions. All other pretrial motions, except severance motions, shall be filed by the defendants no later than November 19, 1992. These include motions for bill of particulars, motions to dismiss, motions to strike language in the indictment and suppression motions. The government is to respond by December 7, 1992. Oral argument will be held on December 14, 1992 at 2:00 p.m.

Defense counsel have already indicated that they will be moving to suppress the tape-recorded conversations in this case. A hearing will undoubtedly be necessary on this issue. The suppression hearing will commence on December 15, 1992 at 10:00 a.m., and continue until completed. Fol-

lowing completion of the suppression hearing(s), motions to sever will be scheduled.

SO ORDERED.