**UNITED STATES of America,**
**Plaintiff,**

v.

**Jay MARCUS, Defendant.**

**No. 01–CR–289 (DRH).**

United States District Court,
E.D. New York.

Sept. 24, 2001.

---

Alan Vinegrad, United States Attorney, Eastern District of New York, Central Islip, NY, By Timothy Driscoll, A.U.S.A., for the Government.

Thomas Liotti, Esq., Garden City, NY, for Defendant.

### MEMORANDUM AND ORDER

HURLEY, District Judge.

The purpose of this opinion is to resolve a number—but not all—of the outstanding pretrial motions made by defendant. The remaining motions, consisting of applications to suppress incriminating statements allegedly made by defendant following his arrest and to suppress physical evidence seized as the result of the execution of a search warrant, will be the subjects of a hearing to be held before the undersigned shortly.

Specifically, the items of relief sought by defendant which are the subjects of this opinion include:

1. Dismissal for manufactured jurisdiction and [sic] charges against the defendant;

.    .    .    .    .

2. Disclosure of *Brady v. Maryland,* 373 U.S. 83, 83 S.Ct. 1194, 10 L.Ed.2d 215 (1963); *Giglio v. United States,* 405 U.S. 150, 92 S.Ct. 763, 31 L.Ed.2d 104 (1972) and *Kyles v. Whitley,* 514 U.S. 419, 115 S.Ct. 1555, 131 L.Ed.2d 490 (1995) material;

3. Disclosure of impeachment material pertaining to Rule 801, 803 and 804 declarants;

4. Preservation and disclosure of handwritten notes;

5. Additional discovery under Rule 16;

6. A Bill of Particulars;

7. Motion In Limine regarding expert or Agent testimony; and

8. If the case proceeds to trial, allowing the defendant to call a psychological expert who will testify regarding the ABEL Assessment Test;

(Def.'s Not. Mot at 1–2.)

Defendant's applications will be addressed seriatim.

### MOTION TO DISMISS INDICTMENT

Defendant is charged in a three count superceding indictment with knowingly and intentionally (1) distributing in interstate commerce, by computer, child pornography, (2) receiving in interstate commerce, by computer, child pornography and (3) possessing material that contains images of child pornography that had been transported in interstate commerce by computer. The statute said to be violated is 18 U.S.C. §§ 2252A(a)(2)(A), 2252A(b)(1), and 2252A(a)(5)(B).

A. *Manufactured Jurisdiction Challenge to the Indictment is Premature*

■ Defendant contends that "the instant case is simply not a Federal case [and is here] due to manufactured Federal jurisdiction." (Liotti May 25, 2001 Decl. at 3.)

As explained by the Second Circuit in *United States v. Wallace:*

These cases make clear that the "manufactured jurisdiction" concept is properly understood not as an independent defense, but as a subset of three possible defense theories: (i) the defendant was entrapped into committing a federal crime, since he was not predisposed to commit the crime in the way necessary for the crime to qualify as a federal offense; ... (ii) the defendant's due process rights were violated because the government's actions in inducing the defendant to commit the federal crime were outrageous; ... or (iii) an element of the federal statute has not been proved, so federal courts have no jurisdiction over the crime....

85 F.3d 1063, 1065–66 (2d Cir.1996).

It is the government's position that "defendant's jurisdictional challenge is premature in that it calls upon [the] Court to determine whether an element of a federal statute has been proven," citing *United States v. Alfonso,* 143 F.3d 772 (1998). (Gov't's Mem. Opp'n at 10.)

Rule 12(b) of the Fed. R. of Crim. P. provides in pertinent part that "[a]ny defense, objection, or request that is capable of determination without the trial of the general issue may be raised before trial by motion."

With respect to the first *Wallace* defense theory embodied within the manufactured jurisdiction concept, viz., entrapment, defendant does claim that he was a victim of governmental entrapment. However, the legitimacy of that position may not be determined as a matter of law at this stage of the proceedings. Compare paragraphs 9 through 20 of Special Agent Michael A. Osborn's September 14, 2000 Affidavit submitted in support of the application for arrest and search warrants (Ex. B, Def.'s Not. Mot.) with defendant's May 25, 2001 Declaration. Rather the factual issue as to defendant's predeposition to engage in the criminal conduct charged, including its interstate element, must be decided at trial. *See United States v. Fadel,* 844 F.2d 1425 (10th Cir.1988); *United States v. Persico,* 520 F.Supp. 96 (S.D.N.Y. 1981), aff'd. 774 F.2d 30 (2d Cir.1995); *United States v. DePalma,* 461 F.Supp. 778 (S.D.N.Y.1978); *United States v. Leighton,* 265 F.Supp. 27 (S.D.N.Y.1967). The same conclusion applies to the second defense mentioned in *Wallace,* that being whether the government's purported actions in inducing defendant to commit the federal crimes were outrageous and, as a result, violative of due process. This is merely an extension of the entrapment defense in the present case, given defendant's focus on the interstate element of the crimes charged.

Similarly the third defense theory embraced within the concept of manufactured jurisdiction as explained in *Wallace,* to wit, that "an element of the federal statute has not been proved," obviously may not be resolved via a pretrial motion.

In sum, each of the three counts in the superceding indictment is facially sufficient, and no claim is made to the contrary. The *Wallace* defenses of entrapment and failure of proof as to interstate commerce, as asserted by defendant, are intertwined with the government's burden of proof and may not be adjudicated by the Court pretrial.

As to due process claim, defendant's Declaration is devoid of information suggesting that a pretrial hearing is required. To the contrary, a perusal of the Osborn

Affidavit, viewed in conjunction with what is said and not said in defendant's Declaration, indicates that the government's conduct comfortably passes constitutional muster, at least on the essentially uncontroverted information presently before the Court. That is true even if the government's conduct is viewed, arguendo, as being akin to a "sting" operation. *United States v. Gendron*, 18 F.3d 955, 961 (1st Cir.1994). Under the circumstances, it would be inappropriate to address and endeavor to resolve defendant's due process manufactured jurisdiction defense pretrial. *See United States v. Alfonso*, 143 F.3d 772 (1998).

### B. *18 U.S.C. §§ 2252A(a)(2)(A), 2252A(b)(1) and 2252A(a)(5)(B) are not Unconstitutional*

In seeking the dismissal of the present indictment, the defendant also urges that the statute under which he is charged is unconstitutional as being violative of the First, Fourth, Fifth and Sixth Amendments to the United States Constitution.[1] In doing so, he raises a number of questions including

Why is [defendant's] reputed behavior a crime? If he in fact accessed child pornography, who did he hurt by doing so? And if he distributed to a detective in Tulsa, Oklahoma what damage was caused in that dissemination? Should Jay Marcus be prosecuted for promoting or furthering the child pornography industry, even though he received no financial or other benefit as part of any conduct that is imputed to him?

(May 25, 2001 Mem. Law Supp. at 2.)

Defendant offers no answers for the above questions which have been propounded apparently simply as a backdrop for his constitutional claims vis-a-vis the child pornography statute alleged to have been violated. Before addressing defendant's specific First Amendment claims, it is necessary to provide the text of the sections under attack. Section 2252A(a)(2) provides:

(a) any person who—(2) knowingly receives or distributes—

(A) any child pornography that has been mailed, shipped or transported in interstate or foreign commerce by any means, including by computer; or

(B) any material that contains child pornography that has been mailed, or shipped or transported in interstate or foreign commerce by any means, including by computer; [is guilty of a crime].

Section 2252A(b)(1) provides that anyone who violates or attempts to violate, inter alia, paragraph 2(a) shall be fined and imprisoned for a period not to exceed 15 years.

Section 2252A(a)(5)(B) provides that anyone who

knowingly possesses any book, magazine, periodical, film, videotape, computer disk, or any other material that contains an image of child pornography that has been mailed, or shipped or transported in interstate or foreign commerce by any means, including by computer, or that was produced using materials that have been mailed, or shipped or transported in interstate or foreign commerce by any means, including by computer, shall be punished as provided in subsection (b).

A violation of Section 2252A(a)(5)(B) calls for a term of imprisonment not to exceed 5 years.

---

**1.** Defendant does not explain the manner in which the statute runs afoul of the Fourth and Sixth Amendments. Accordingly, the discussion in the text will confine itself to the purported unconstitutionality of the statute under the First and Fifth Amendments.

■ Defendant maintains that the statute violates the due process clause of the Fifth Amendment as impermissibly vague. A criminal statute must define the proscribed conduct "with sufficient definiteness that ordinary people can understand what conduct is prohibited and in a manner that does not encourage arbitrary and discriminatory enforcement." *Kolender v. Lawson,* 461 U.S. 352, 357, 103 S.Ct. 1855, 75 L.Ed.2d 903 (1983). "A statutory provision will not suffer constitutional invalidation merely because of a lack of complete precision." *United States v. Marks,* 364 F.Supp. 1022, 1026 (E.D.Ky.1973) ("to avoid constitutional invalidation, the statute must simply convey adequate warning of the proscribed conduct."). *United States v. Long,* 831 F.Supp. 582, 587 (W.D.Ky.1993).

Defendant proffers that the statute suffers from vagueness because the "statute does not define what knowledge entails" and "[t]he photographs [involved in this case] are graphic but one can not tell from looking at them what the ages are of the participants therein." (Def.'s May 25, 2001 Mem. Supp. at 5.) He further complains that the term "lascivious" as used in § 2256(2)(E) is not defined. (*Id.*) It is also argued that an individual, such as Mr. Marcus, might receive pornographic pictures in which the participants were minors when the pictures were taken but "twenty years later, when it is alleged that Mr. Marcus received them, the participants would be adults." (*Id.*)

■ Proceeding in reverse order, the age of the participants at the time the photographs were taken, rather than when viewed by an accused, is controlling. *Cf.* § 2252A(c)(2). Otherwise persons interested in disseminating such information could, for example, photograph 8 year-olds engaged in explicit sexual activity and then hold the materials until the youngest participant reached majority thereby precluding a prosecution under the statute. A common sense reading of § 2252A lends no support for the defendant's argument. Not surprisingly, absent from defendant's submission is any authority for the position urged.

As to defendant's second argument, most of the items which were allegedly received, possessed, and/or distributed by defendant appear to fall within § 2256(a)(A)'s definition of "sexually explicit conduct" and thus the government will not be required, at least as those items, to rely on the alternative "lascivious exhibition" language contained in § 2256(2)(E). And, in any event, the Supreme Court has upheld the use of the term "lascivious" in an obscenity context. *Hamling v. United States,* 418 U.S. 87, 111, 94 S.Ct. 2887, 41 L.Ed.2d 590 (1974).

Lastly, the argument in support of the vagueness claim that the photographs are graphic but "one cannot tell looking at them what the ages are of the participants" is also unconvincing. Initially, it is noted that the government must establish to the satisfaction to the jury beyond a reasonable doubt that the defendant was aware that one or more of the participants in the photographs was a child. *See, e.g., United States v. X–Citement Video, Inc.,* 513 U.S. 64, 73, 115 S.Ct. 464, 130 L.Ed.2d 372 (1994); *United States v. Burian,* 19 F.3d 188, 191 (5th Cir.1994). In some instances, assuming that the descriptions provided by Agent Osborn are accurate, the government's task would not appear to be formidable. *See, e.g.,* Image 16(B) at p. 10 of Osborn Affidavit describing one item allegedly received by defendant as "an image of a male toddler receiving oral sex from an adult female."

In sum, the Court finds that the statute under which defendant is charged is not at odds with the due process clause of the Fifth Amendment. To the contrary, the

statute clearly apprises individuals of the nature of the conduct proscribed. *United States v. Colavito,* 19 F.3d 69 (2d Cir.1994). Accordingly, defendant's invocation of the rule of lenity is also misplaced. *See United States v. Vig,* 167 F.3d 443, n. 9 (8th Cir.1999) ("[b]ecause we have concluded that no grievous ambiguity or uncertainty exists in the statute involved, we find the rule of lenity to be inapplicable in this case.").

■ Defendant also urges that § 2252A is violative of his First Amendment right to privacy as defined by the Supreme Court in *Stanley v. Georgia,* 394 U.S. 557, 89 S.Ct. 1243, 22 L.Ed.2d 542 (1969). That position is off-target. *Stanley* held that the government may not regulate the nature of the books or films that a person uses in the privacy of his or her home. However, that protection does not preclude a prosecution of someone who receives such materials via interstate transportation, even if by private means and for private use. *United States v. Orito,* 413 U.S. 139, 141–42, 93 S.Ct. 2674, 37 L.Ed.2d 513 (1973). Thus Count Two, which charges defendant with that crime, is not subject to dismissal as violative of the First Amendment. Nor does *Stanley* insulate an individual from prosecution for distributing such items. *United States v. Reidel,* 402 U.S. 351, 355, 91 S.Ct. 1414, 28 L.Ed.2d 813 (1971). Accordingly, *Stanley* does not invalidate Count One.

But how about Count Three, which charges defendant with possessing child pornography which crossed state lines? In arguing that mere possession falls within the protective rubric of *Stanley,* defendant equates Congress' concern about child pornography with "the 1930's movie classic, Reefer Madness, which accused all those who smoked marijuana as being addicts and possessed by demons. Not since the McCarthy era [defendant opines] has Congress sought to legislate morality to

such extremes." (Def.'s May 25, 2001 Mem. Supp. at 3.)

The prohibition against the knowing possession of child pornography has survived numerous constitutional challenges. *See, e.g., United States v. Colavito,* 19 F.3d 69 (2d Cir.1994); *United States v. Schmeltzer,* 20 F.3d 610 (5th Cir.1994); and *United States v. Burian,* 19 F.3d 188 (5th Cir.1994). However, neither party has cited—nor is the Court aware of—a case addressing the precise issue broached by defendant, i.e., whether possession of child pornography in one's home, standing alone, may legitimately be criminalized in view of *Stanley.*

The obscene materials possessed in *Stanley* consisted of "films depict[ing] nude men and women engaged in acts of sexual intercourse and sodomy," not child pornography. *Stanley v. State,* 224 Ga. 259, 161 S.E.2d 309 (1968), *rev'd, Stanley v. Georgia,* 394 U.S. 557, 89 S.Ct. 1243, 22 L.Ed.2d 542 (1969). Yet, an argument can be made that the sweeping language employed by the Supreme Court in *Stanley* pertains to any film possessed within the confines of one's home including, e.g., snuff films (in which one or more of the participants is murdered as part of the presentation) and child pornography.

While Georgia was unsuccessful in arguing that a prohibition on the possession of obscene material was a necessary incident of its recognized right to prohibit distribution, there is no reason to extend that holding beyond the facts in *Stanley.* To do so would ignore the obvious distinctions between adult pornographic films (or like visual depictions, as distinct from the written word) and child pornography.

A legitimate debate may be waged as to whether the possession of adult pornographic films in the privacy of one's home victimizes anyone thereby warranting state intrusion. The individuals depicted are

typically willing participants, legally capable of consent. Child pornography, on the other hand, like snuff films, necessarily victimize someone. The victims of child pornography are youngsters, incapable of consenting as a matter of law, who are sexually abused for the gratification of others.

Of course, the defendant is charged in Count Three with possession, not producing the subject visual depictions. But surely there is a direct correlation between the legal right to possess such materials and the demand for their production, or so a legislature could properly conclude. Granted, receiving such items may be illegal. However, if the recipient knows that a possession-based prosecution may not be instituted once the materials cross the residential threshold, he or she will presumably be more likely to acquire child pornography. And increased demand enhances the sexual exploitation of children.

In sum, given the above described distinctions between adult and child pornography the government may prohibit the possession of the latter even within the confines of one's home. The prohibition is justified both per se and as incidental to the government's right to prohibit the receipt and distribution of child pornography. Which is to say, defendant's constitutional attack on § 2252A(a)(5)(B) is found to be without merit.

For the reasons indicated, defendant's motion to dismiss the indictment on the basis of purported constitutional infirmities under the First and Fifth Amendments is denied.

## GOVERNMENT'S BRADY OBLIGATION

Defendant has moved for the production of *Brady*,[2] *Giglio*[3] and *Kyles*[4] material ("*Brady* material"). In response, the government has indicated:

> [It] is not aware of any exculpatory material discoverable under *Brady v. Maryland*, 373 U.S. 83, 83 S.Ct. 1194, 10 L.Ed.2d 215 (1963), and its progeny. The government is aware of its continuing duty to disclose exculpatory information. If and when such information becomes known to the government, it will be promptly disclosed.

The government is reminded that its obligation to determine the existence of *Brady* material must be expanded to include the files of any state or local officials who assisted in the investigation.

Given the government's representation that it will "promptly disclose[ ] such information when and if it is located," no further action by this Court is required at this time. However, the government should conduct its search forthwith given that this case should be ready for trial shortly.

---

**2.** Under the holding of *Brady v. Maryland*, 373 U.S. 83, 83 S.Ct. 1194, 10 L.Ed.2d 215 (1963), suppression by the prosecution of evidence favorable to the defendant violates due process where the evidence is material to guilt or punishment.

**3.** A co-conspirator of the defendant in *Giglio v. United States*, 405 U.S. 150, 92 S.Ct. 763, 31 L.Ed.2d 104 (1972), was promised that he would not be prosecuted if he testified for the government. That promise was not disclosed to the defense, causing the Supreme Court to hold: "When the reliability of a given witness

may well be determinative of guilt or innocence, non-disclosure of evidence affecting credibility falls within [the *Brady* rule]." *Id.* at 154, 92 S.Ct. 763 (internal quotation omitted).

**4.** The Supreme Court in *Kyles v. Whitley*, 514 U.S. 419, 115 S.Ct. 1555, 131 L.Ed.2d 490 (1995) underscored, inter alia, that the "prosecution has a duty to learn of any favorable evidence known to others acting on the government's behalf, including the police." (*Id.* at 437, 115 S.Ct. 1555.)

*REQUEST FOR DISCLOSURE OF IM-
PEACHMENT EVIDENCE CON-
CERNING STATEMENTS THE
GOVERNMENT WILL SEEK TO
INTRODUCE AT TRIAL OF OUT-
OF-COURT DECLARANTS WHO
WILL NOT BE CALLED AS GOV-
ERNMENT WITNESSES*

In response to the above request, the government indicates that it is aware of no such materials. Should the government, in perusing its files for *Brady* materials and materials which fall within the purview of this request, discover either or both types of information, it shall either (1) furnish such information promptly to the defense or (2) forthwith notify the Court and defense counsel of the general nature of the items discovered and its proposed timetable for their release.

*PRESERVATION OF HAND
WRITTEN NOTES*

The government consents to this request and the Court, via this decision, "so orders" that agreement between counsel.

The request that the notes be disclosed is denied except to the extent such items constitute *Brady* or other materials directed elsewhere in this opinion to be furnished pretrial.

*REQUEST FOR ADDITIONAL
DISCOVERY*

The defendant, after noting that he has been provided with some discovery, "submits that the government has not produced all the materials to which he is entitled under Fed.R.Crim.P. 16 and the due Process Clause of the Constitution of the United States." (Loitti May 25, 2001 Decl. at 19.) Defendant then asks for "additional discovery" of numerous items contained in twelve separately numbered paragraphs.

The government contends that it has "in its letter of March 22, 2001 [Ex. 3, Gov't's Mem. Opp'n], . . . already provided all of the material discoverable under Rule 16 of the Federal Rules and has reviewed with defense counsel the tangible objects including the hundreds of child pornography files from the defendant's computer." (Gov't's Mem. Opp'n at 19.)

Some of the "additional items" sought by the defense appeared to have already been furnished to the defense via the March 22nd discovery letter. Compare para. 8 of defendant's demand seeking his complete criminal history with para. 2 of the March 22nd letter, entitled "Criminal History," detailing the government's awareness of defendant's prior contacts with the criminal law.

Some of the other items sought by the defendant will not be addressed at this time given the lack of authority provided for the proposition that their disclosure is required. The items requested by the defendant falling within that category are found in requests 4, 9 and 11. Those requests are denied, without prejudice to renewal with supporting authority.

Defendant particularly underscored in his submission the significance of request number 6 which reads:

All documents reflecting the chain of custody of defendant's computer and all equipment and technology relating thereto or any other property seized from his home.

As to that request, defendant maintains that "it is clear that the defendant is not only entitled to the final reports of scientific or medical examinations, but to all the information, notes and individual tests upon which those reports are based." (Liotti May 25, 2001 Decl. at 20.)

In support of that proposition defendant cites *United States v. Green,* 144 F.R.D. 631, 639 (W.D.N.Y.1992).

It is noted that request number 6 pertains to the chain of custody of items taken from defendant's home. *Green,* and indeed the explanation provided by the defense as to the importance of discovery request number 6, does not address the chain of custody issue. Accordingly, that request is denied, without prejudice.

■ With respect to request number 7 (which the Court believes is the request defendant intended to emphasize rather than number 6), defendant is entitled under Rule 16(a)(1)(D) and (E) to a written summary of any expert testimony which the government will seek to present to the jury.

Rule 16(a)(1)(C) provides for the discovery of documents in the possession of the government "which are material to the preparation of the defendant's defense." Considering that language, in conjunction with the requirement under Rule 16(a)(1)(D), which provides for the discovery of the "results or reports of physical or mental examinations and of scientific tests or experiments" leads me to the conclusion that the court in *United States v. Green* was correct in directing the government "to turn over to the defendant[ ] not only all scientific reports but also all findings, scientific or technical data upon which such reports are based." *United States v. Green,* 144 F.R.D. at 639. Accordingly, that direction to the government in *Green* is incorporated by reference.

In the government's letter of March 22, 2001, it indicates that it will provide "information about any expert witness at a time closer to trial." Ten months have elapsed since that letter was written. The Court anticipates that the trial of this action will commence during the winter, or at the latest, during the early spring of 2002. Therefore, the time for the government to provide the information concerning any expert witnesses that they intend to call at trial is rapidly approaching if the defense

is to have adequate time to review the material and prepare for trial. The government is directed to furnish the information called for in this portion of the opinion to defendant on or before February 15, 2002.

As noted earlier, defendant's request to suppress oral statements and physical items of evidence are the subjects of a hearing to be held shortly. The government will furnish a copy of the search warrant, along with the accompanying information sought in request number 10, to the defense on or before February 8, 2002.

### REQUEST FOR A BILL OF PARTICULARS

The next item of relief sought by defendant is a bill of particulars pursuant to Fed.R.Crim.P. 7(f).

■ The purpose of a bill of particulars is to permit a defendant "to identify with sufficient particularity the nature of the charge pending against him, thereby enabling defendant to prepare for trial, to prevent surprise, and to interpose a plea of double jeopardy should he be prosecuted a second time for the same offense." *United States v. Bortnovsky,* 820 F.2d 572, 574 (2d Cir.1987). The Second Circuit has explained that "[g]enerally, if the information sought by defendant is provided in the indictment or in some acceptable alternate form, no bill of particulars is required." (*Id.*) Accordingly, a bill of particulars "should be required only where the charges of the indictment are so general that they do not advise the defendant of the specific acts of which he is accused." *United States v. Torres,* 901 F.2d 205, 234 (2d Cir.1990)(internal quotation marks omitted.) "It is not enough that the information would be useful to the defendant; if the defendant has been given adequate notice of the charges against him, the government is not required to disclose addi-

tional details about its case." *United States v. Payden,* 613 F.Supp. 800, 816 (S.D.N.Y.1985).

■ With the above principles in mind, attention will now be directed to defendant's requests. Requests two through 10 seek specifics concerning the search warrant that was issued in this case, including such items as "the names, addresses and dates of birth of all persons who provided information to law enforcement in support of the application for a search warrant in this case." (Liotti May 25, 2001 Decl. at 21–22.)

Items 1, 11 through 15 and 22 pertain to the charges contained in the indictment. The remaining requests ask for specifics concerning the defendant's arrest and the subsequent incriminating statements he allegedly made to law enforcement.

The government resists defendant's request for a bill of particulars arguing:

> The defendant is charged with distributing and receiving child pornography. The Affidavit lists and describes the files transmitted and received by the defendant. Moreover, defense counsel has already reviewed (and had when his motion was filed) dozens of child pornography files found on the defendant's computer.

(Gov't's Mem. Opp'n to Mot. to Suppress at 20.)

Some of the information sought in the bill of particulars is already known by the defendant or will be known as a result of certain discovery directives contained in this decision. The other items sought have not been shown by defendant to be necessary to prepare for trial, avoid surprise, or to be needed for the purpose of asserting the defense of double jeopardy should the government endeavor to prosecute him again for the conduct embraced within the present accusatory instrument. Accordingly, the request for a bill of particulars is denied.

### MOTION IN LIMINE REGARDING EXPERT OR AGENT TESTIMONY

Presumably this request pertains to any expert testimony being proffered by the government pursuant to Article VII of the Federal Rules of Evidence, whether such expert testimony is provided by an agent or another person qualified by reason of knowledge, skill, experience, training, or education to provide an opinion to the jury. The Court is aware of its gatekeeper role under Rule 104(a) as explained in such cases as *Daubert v. Merrell Dow Pharmaceuticals, Inc.,* 509 U.S. 579, 113 S.Ct. 2786, 125 L.Ed.2d 469 (1993) and *Kumho Tire Co. v. Carmichael,* 526 U.S. 137, 119 S.Ct. 1167, 143 L.Ed.2d 238 (1999). Accordingly before the government—or defendant for that matter—is permitted to call an expert to the stand, the Court will conduct a hearing to determine if the information sought to be elicited is sufficiently trustworthy.

By way of format, the hearings will be initially by way of proffers and oral arguments by counsel; if at the conclusion of that process, the Court determines that the taking of testimony is required, a subsequent hearing or hearings will be scheduled.

### DEFENDANT'S APPLICATION TO CALL PSYCHOLOGICAL EXPERT REGARDING ABEL ASSESSMENT TEST

As noted, any expert which either party seeks to call, including the individual identified in the caption to this portion of the opinion, will be subject a *Daubert/Kumho* hearing.

### OTHER DEFENSE REQUESTS

■ In addition to the requests specifically identified in defendant's Notice of Motion, other requests are contained in his

submissions. Two of those warrant discussion, viz., (1) request that government be precluded from introducing into evidence any items it claims constitute child pornography and (2) request that the government be precluded from eliciting evidence regarding adult pornography recovered during the search of defendant's home.

The first request is denied. *See United States v. Campos*, 221 F.3d 1143, 1148–49 (10th Cir.2000)(not an abuse of discretion for district court to permit jury to view the two images of child pornography that defendant allegedly transported notwithstanding defendant's offer to stipulate that those images constituted child pornography).

Although Federal Rule of Evidence 403, or other considerations may, in any appropriate case, warrant the relief sought by defendant, this case—at least on the information presented—does not call for such a result. Thus, for example, defendant attacks Section 2252A on the ground, as noted earlier, that although "the photographs ... are graphic ... one cannot tell by looking at them what the ages are of the participants therein." (Def.'s May 25, 2001 Mem. Supp. at 5.) Defendant's knowledge is an element of the government's burden of proof. The jury is entitled to view the images to determine whether the government has met its burden of proof as to that element.

 Defendant's second request—again, on the information currently before the Court—is granted. Adult pornography linked to defendant appears to be irrelevant to the charges contained in the indictment. And, if relevant, Rule 403 weighs against admission. *See United States v. Harvey*, 991 F.2d 981 (2nd Cir. 1993).

## CONCLUSION

The Court has considered all the arguments advanced by defendant, not only those specifically addressed above. Those not specifically mentioned, have been found to be devoid of merit.

The above constitutes the decision and order of the Court.

SO ORDERED.